JOHN S. DANCY, Adm'r of JACOB HIGGS, dec'd, *v.* FRANCIS A. POPE, JOHN J. LONG, ROBERT L. JOYNER and others.

Letters of administration granted to one in 1867, who is removed in the Fall of 1869 and another appointed in his place, are governed by the law as it was prior to July, 1869.

An absolute judgment is a lien not only upon the assets in hand, but also upon such assets as may come in hand after its rendition. It is a lien upon the estate of the deceased debtor, and must be first paid, according to the date of the judgments respectively.

*Quando* judgments are to be paid in the second instance out of the fund, according to the date of the judgments respectively, *quando* judgments on specialties taking preference of those obtained on simple contract debts.

A decree in equity declaring a debt, and held for " further directions," is to all intents and purposes a *quando* judgment and entitled to the same *status* in the distribution of assets.

(*Anon.*, 1st Haywood, 530; *McLean* v. *Leach*, *ante*, 95, cited and approved.)

CIVIL ACTION, in the nature of a bill of interpleader, heard before *Cloud, J.*, at the Special (January) Term, 1873, of HALIFAX Superior Court.

The facts involved in this case, as found by the Judge of Probate of Halifax county, and the issues of law joined thereon and sent to the Judge of the Superior Court to be determined, and which bear on the decision made by this Court, are substantially as follows :

Jacob Higgs, a citizen of Halifax county, died intestate in the year 1866, leaving a considerable estate, real and personal. At the February Sessions of the County Court, 1867, of said county, one William Fenner was appointed administrator of intestate's estate, gave bond and entered into the administration of the same. Certain creditors of the estate at once brought suit against the administrator, Fenner, and obtained judgments therein for various amounts *absolutely*, the administrator failing to plead, having at the time of the judgments personal assets, which he subsequently wasted. Other creditors subsequently obtained *quando* judgments against Fenner, the administrator, and one Robert L. Joyner, who had been a ward of the intestate, in a suit in equity for a settlement, obtained a decree " of assets *quando*," for a large amount.

Some of the judgments entered up against the estate of the intestate were upon specialties, others based upon open, unsigned accounts ; and the proceeds of the personal estate being wholly inadequate to pay the same, Fenner, the administrator, filed a petition to sell the real estate of Higgs, the intestate, for the purpose of assets.

Fenner, the first administrator, becoming insolvent, and having wasted and misapplied the assets belonging to the

estate of Higgs, was removed, and Dancy, the present plaintiff, appointed in his stead. Under the proceeding instituted by the first administrator, the plaintiff sold the land, and a part of the proceeds being realized, he now seeks the advice of the Court as to how the same shall be applied.

His Honor, upon the points submitted to him, adjudged, that the absolute judgments obtained by Fenner's failing to appear and plead, are to be satisfied out of the personal assets alone, and are entitled to no part of the assets derived from the sale of the land.

That the decree in equity is to be regarded as of the same dignity as a judgment on a bond ; and in regard to its satisfaction, it stands upon the same footing as a judgment rendered on a bond.

The judgments *quando* rendered on bonds are to be preferred, in the application of assets derived from the sale of real estate, to the absolute judgments.

The judgments *absolute,* rendered in cases first pleaded to, or first taken without plea, are entitled to be first satisfied out of the personal assets.

The judgments *quando* rendered on bonds are entitled to preference in the order of time in which they were pleaded to, except when indulgence of time was granted ; in which case the judgment is entitled to the same preference as if the judgment had been rendered at the term when the indulgence was granted.

From this judgment the defendant, Long, appealed.

*Moore & Gatling* and *Batchelor, Edwards & Batchelor* and *Conigland,* for defendants.

*Battle & Son,* contra.

PEARSON, C. J. This is an action in the nature of a bill of interpleader, in which the administrator brings the fund into Court, and asks that it may be distributed under the

advice of the Court according to the rights of the judgment creditors, all of whom are made party defendants. It differs from " a creditor's bill " only in the particular, that in such a bill the debts are to be ascertained and paid in a due course of administration, where, as in this action, the debts have already been ascertained by judgment, and the only question is in regard to the legal priority of the judgments.

Upon the argument, the counsel seem to have misconceived the nature of the action, and all of the learning and the cases cited, where the object is to charge the personal representative, *individually*, for a *devastavit*, or for false pleading or for bad pleading ; as when an administrator under the plea, " fully administered," offers to show " former judgments," in order to which he ought to have pleaded " former judgments and no assets—*ultra*," have no bearing upon our question ; for the purpose of this action is not to charge the administrator, but to have the fund distributed according to a due course of administration.

The case is governed by the old law, for Fenner took out letters of administration in 1867, and the substitution of the plaintiff in his stead does not bring the case within the operation of the act of 1869 ; for the appointment of the plaintiff as administrator is merely a continuation of the former administration.

The recent legislation, by which all of the debts of persons deceased are to be paid *pro rata*, without regard to the dignity of the debt, as it was termed, and provision is made for putting the estate into liquidation much in the mode of bankruptcy, has made these questions of no general practical importance.

I will, therefore, without a discussion of the cases, merely state the conclusions to which the Court has arrived, upon general principles of the law. Ever since the case in 1st Haywood, 530, *Anonymous*, where the Judges, Haywood and Stone differ in opinion, it has been the opinion of the pro-

fession· that an absolute judgment was a lien not only upon the assets then in hand, but upon the assets that come to hand afterwards; as Judge Haywood says, " the executor may have suffered it, knowing assets would afterwards come to his hands sufficient to satisfy it, by admitting assets he has made himself absolutely liable for the debt." Land is now liable for the payment of all of the debts of the deceased debtor, after the personal estate is exhausted. Suppose an administrator confesses assets, or suffers judgment by default which fixes him with assets, this is an absolute judgment, and other creditors take judgments *quando;* afterwards the land is sold and assets come to hand ; if the creditor having an absolute judgment cannot reach the proceeds of the sale of the land, he is thrown back upon his resort to the individual liability of the administrator, and if he is insolvent loses the debt for his folly in taking an absolute instead of a *quando* judgment. This is too plain to talk about. A creditor who has obtained an absolute judgment is entitled to have his judgment satisfied out of the estate and stands number one. If he gets satisfaction out of the administrator *de bonis propriis,* well ; if not, he may look to assets that afterwards come to hand, on the principle that his judgment is a lien upon the estate of the deceased debtor. We are of opinion that the defendants who have absolute judgments are to be paid in the first instance out of the fund, according to the date of the judgments respectively.

We are also of opinion that the defendants who have *quando* judgments are to be paid in the second instance, out of the fund, according to the date of the judgments respectively. But the defendants who have *quando* judgments upon simple contract debts .are not entitled to any part of the fund until the defendants who have *quando* judgments upon specialty debts are fully paid. A *quando* judgment fixes the debt but does not bind the assets; hence, the ren-

dition of judgment does not change the dignity of the debt, and the creditor gets no lien upon the estate until his judgment is made absolute; and as is decided, *McLean* v. *Leach*, at this term, " the creditor who first proceeds upon his *quando* judgment and fixes the administrator with assets, must be first paid, without any regard to the priority of judgments."

In our case, none of the creditors by judgments *quando* " have fixed the administrator with assets." This is not a proceeding to fix him with assets, but to distribute the fund under the direction of the Court.

We regard the decree in favor of Joyner as a *quando* judgment. It was for some time questioned, but is now settled, that a decree in equity is to be treated as a judgment at law in a due course of administration of the legal assets; hence a decree that declares the debt and is " held up on further directions," is to all intents and purposes a *quando* judgment, or rather it is entitled to the same *status* in the distribution of the fund.

In regard to the part of the fund consisting of bonds payable to Turner, as guardian, and the proceeds of such as he collected and paid over to the plaintiff, there will be a reference, with a view of allowing the defendant Joyner the benefit thereof, and the right to come in for the balance according to his priority in the distribution of the fund, and we concur with his Honor that he stands as a bond creditor.

The judgment below is reversed, and it is referred to the Clerk of this Court, to state an account, distributing the fund according to this opinion.

We agree with his Honor in three points out of four, but upon the first and main point, there is error.

PER CURIAM.                     Judgment accordingly.