A. SPEER, et als. v. J. H. JAMES, Administrator, et als.

*Sale of Lands for Assets—Statute of Limitations—Heirs.*

Where an administrator files a petition to sell the lands of his intestate to make assets, if the debts to be paid have not been reduced to judgment, the heir may plead that they are barred by the statute, but when the demand has been reduced to judgment against the administrator, the heir is bound by the judgment unless he can show that it was obtained by collusion and fraud, and is barred by it from setting up any matter which might have been pleaded by the administrator as a bar in the suit against him.

(*Baker* v. *Webb*, 1 Hay., 43; *Alston* v. *Summers' Heirs*, 2 Hay., 404 (609); *Trimble* v. *Jones*, 3 Murph., 579; *Carrier* v. *Hampton*, 11 Ired., 307; *Moore* v. *Edwards*, 92 N. C., 43; *Wordsworth* v. *Davis*, 75 N. C., 159; *Oates* v. *Lilly*, 84 N. C., 643; *Dobson* v. *Simonton*, 93 N. C., 268; *Armistead* v *Harramond*, 4 Hawks, 339; *Strickland* v. *Murphy*, 7 Jones, 242, cited and approved. *Bevers* v. *Parks*, 88 N. C., 456, distinguished and approved).

CIVIL ACTION, in the nature of a creditor's bill, tried before *Montgomery, Judge,* and a jury, at Spring Term, 1886, of the Superior Court of YADKIN county.

This action, begun on January 18th, 1882, as a creditor's suit, is prosecuted against the administrator and heirs-at-law of John Douglas, deceased, the intestate debtor, to enforce a sale of the descended lands for the payment of his debts. The only issue submitted to the jury was this:

Are the plaintiffs' claims, or any of them, barred by the statute of limitations, or presumption of payment?

27

Under instructions, the jury found against all the claims, except the judgment in favor of D. E. Dobbins, administrator of Jesse Dobbins. The plaintiff offered in evidence a judgment in favor of A. Speer, for the sum of thirty-three dollars and eighty-three cents, against the defendant J. H. James, administrator of John Douglas, recovered before a Justice of the Peace on the 19th day of November, 1880. The summons before the Justice was issued on the 3rd day of March, 1880. The cause of action was founded upon a bond under seal, due one day after date, and dated January 6th, 1863.

Also, judgment in favor of J. M. Jones and J. H. Williams, executors of C. W. Williams, for the sum of thirty-two dollars and ninety-one cents, against said administrator, recovered before a Justice of the Peace on the 3rd day of March, 1880. The summons before the Justice was issued on the 19th day of January, 1880. The cause of action was founded on a bond under seal, executed by the said John Douglas, on the 7th day of August, 1862, and due one day after date.

Also, judgment in favor of Tennessee Phillips, for the sum of nine dollars, against said administrator, recovered before a Justice on the 7th day of February, 1880. The summons before the Justice was issued on the 17th day of January, 1880. The cause of action was founded on a bond under seal, executed by the said John Douglas, deceased, on the 6th day of September, 1862, due one day after date.

It was agreed that the said John Douglas died intestate in the month of February, 1873, and that letters of administration were granted to the defendant, J. H. James, on the 21st day of August, 1879.

The plaintiffs insisted that the defendants were bound by the judgments rendered by the Justices, and that the time elapsing from the death of the said John Douglas, to the time of the qualification of the defendant J. H. James, as administrator, should not be computed in counting the time that raises the presumption of payment or statute of limitations.

His Honor held that the judgments against the administrator were not binding on the heirs-at-law of the deceased, when the summons issued after the time had elapsed raising the presumption of payment or statute of limitation, and that the time elapsing between the death of said John Douglas, and the appointment of J. H. James, administrator, should not be counted out; and instructed the jury to render a verdict for the defendants heirs-at-law, to all the claims, except the one in favor of John Mackie, assigned to Dobbins, on which no contest was made.

The plaintiffs, A. Speer, Jones & Williams and Tennessee Phillips, excepted to his Honor's ruling, and appealed to the Supreme Court.

*Mr. C. B. Watson*, for the plaintiffs. •

*Mr. John Devereux, Jr.*, (*Mr. J. B. Batchelor* was with him,) for the defendants.

SMITH, C. J. (after stating the facts).   The question presented by the appeal is, whether the heirs-at-law can go behind the judgments recovered against the administrator, and set up as a defence to the bonds, the statutory presumption of payment, arising from the lapse of time since their maturity, in like manner as if no action had been prosecuted, and no judgment rendered thereon. The ruling of the Court, we presume, was predicated upon the decision in *Bevers* v. *Parks*, 88 N. C., 456, in which it is held that in any proceeding instituted by the personal representative of a deceased debtor, against his heirs or devisees, to convert by sale the descended or devised lands to the payment of debts barred by the statute of limitations, which defence the latter will not set up, the defendants may avail themselves of the bar to defeat the action.   In this case, judgment had been recovered against the plaintiff as administrator, and had itself become barred by the lapse of time.   But the Court, near the close of the opinion, adds: "It is not necessary that we should decide, nor do we undertake to do so in this case, how far the heir may

be bound *by a valid subsisting judgment* against the administrator, or to what extent he may contest the validity of the demand on which it is founded."

The inquiry thus suggested and left unresolved, is presented in the present appeal for our determination. Before proceeding to consider it, it may not be amiss to refer to *Baker* v. *Webb*, 1 Hay., 43, the only case bearing upon the subject found in our own adjudications. In this case, the plaintiff's title to the land sued for, was derived from a sheriff's sale, and deed to a purchaser from whom he claims, under an execution issued in 1772, upon a *judgment recovered against the executors* of the deceased debtor, and which commanded the sheriff to "*levy of the goods and chattels, lands and tenements in the hands of the executors,*" &c. The parties in whom the real estate of the deceased had vested, do not appear to have been in the action, and the proceeding was under the statute, 5 George, 2 ch., 5, which made lands in the hands of the heir, liable for the ancestor's debts, and it was in reference to the contention that such a sale would pass the estate in the lands, that the words recited were used by Judge Macay.

Soon after this decision was made, perhaps in consequence of it, was passed the act of 1784, Potter's Revisal, ch. 226, which, after declaring the existence of doubts, "whether the real estate of deceased debtors in the hands of their heirs or devisees, should be subject to the payment of debts upon judgments obtained against the executors or administrators, in order therefore to remove such doubts in future, and to direct the mode of proceeding in such cases," proceeds to enact:

"That in all suits at law, where the executors or administrators of any deceased person shall plead fully administered, no assets, or not sufficient assets to satisfy the plaintiff's demand, and such plea shall be found in favor of the defendant, the plaintiff may proceed to ascertain his demand, and to sign his judgment; but before taking out execution against the real estate of the deceased debtor, a writ or writs *scire facias*, shall and may

issue, summoning the respective heirs and devisees of such deceased debtor, to show cause why execution should not issue against the real estate, for the amount of such judgment, or so much thereof, as there may not be personal assets to discharge; and if judgment shall pass against the heirs or devisees or any of them, execution shall and may issue against the real estate of the deceased debtor in the hands of such heirs or devisees, against whom judgment shall be given as aforesaid."

Section 5 provides that when the plea of a want of personal assets shall be found in favor of the defendant, the heirs and devisees thus brought in, may contest the truth of such findings, and upon their plea that the personal representatives "have sufficient assets, or have wasted or concealed the same, the Court shall order the trial of a collateral issue" between them, which, if found against such personal representative, "the original plaintiff shall have execution, not only against the goods and chattels of the deceased debtor, but against the proper goods, chattels, lands and tenements of such executors or administrators; any law or custom to the contrary notwithstanding."

The method of procedure provided in this statute, as the means of access to the real estate, and by a sale and conversion in separate actions, at the instance of creditors, attended as it was with great expense and inconvenience, prevailed until the passage of the act of January 14th, 1847, which substitutes a single proceeding by the personal representative against those to whom the lands have been devised or descended, for license to sell, and appropriate the proceeds in aid of the personal assets in payment of the decedent's debts, and is still in force. The Code, §1436, et seq. The superseding enactment was manifestly not intended to change the relations of the heir towards the party suing to subject the lands, or to confer new rights, not possessed when the process was by the scire facias, but leaving him as he was before, to set up such defences as were then available, to substitute a single and more convenient proceeding for the sale of the land, conducted by the executor or adminis-

trator, for and as representing all the creditors. The act of 1784, was intended to give the heir a day in court—an opportunity to be heard, in showing why the land should not be sold, and to settle the doubt whether this could be done, as contended in the case referred to, without his presence. The inquiry then is, what will the heir say when he is brought into Court by the service of the *scire facias,* "why execution should not issue against such real estate for the *amount of such judgment,* or so much thereof as there may not be personal assets to discharge ?"

Very soon after the enactment, it was held to be unnecessary to issue any process to the *administrator,* as he continued in court until every controversy which the heir might raise by his plea that the administrator has, or ought to have, assets, is settled. *Alston* v. *Summer's Heirs,* 2 Hay., 404, (609).

In *Trimble* v. *Jones,* 3 Murph., 579, a plea by the heirs that the descended lands had all been sold to satisfy prior judgments, was declared to be no defence, because the judgment is not rendered against the *heirs personally,* but *against the lands,* and such plea is but a defence of the titles of the purchasers, acquired under such sale, which the creditor, by a second sale, may dispute, and this he cannot do, unless allowed to proceed. Delivering the opinion, HALL, J., says: "The heirs are at liberty to plead many pleas when the *scire facias* is served on them, which, if true, would prevent judgment passing against them. They might plead that the executor or administrator had not fully administered, but had assets ; that the judgment against the executor or administrator was obtained by fraud, &c." But it is not intimated that the judgment is inoperative as to them, and that they could interpose any objection, as if none had been rendered, to the demand in its original form. The judgment is considered when infected with no fraud, or the result of collusion, as *estabing the debt,* and to put it out of the way, must itself be impeached. It is the duty of the personal representative to protect the deceased against unfounded claims, and in the absence of evidence of fraud or collusion, it must be presumed he has done

so, in an adversary action, and hence, when not assailed by the heir in the manner allowed, subsists in full force, for subjecting all the estate of the debtor, *real as well as personal,* the one after the other, to the payment of his liabilities.

The very language of the process shows this limitation upon admissible defences, for it summons him, not to show cause why judgment should not be entered, but "why execution shall not issue for the amount of such judgment," ascertaining and determining, when *bona fide,* the fact of the indebtedness. The practice, we believe, under the act, has been uniform and consistent with this interpretation of the law, during the sixty years of its operation, and we know of no adjudication to the contrary. In *Carrier* v. *Hampton,* 11 Ired., 307, RUFFIN, C. J., referring to the question of assets raised by the heir, says: "That is a collateral issue, and the creditor stands by awaiting the result, for the sake of the right of the other parties as between themselves; for the law supposes the creditor is to be paid at all events, by the one side or the other, whichever has the estate of the debtor, that is then chargeable; and to that end, if the issue be found against the executor, it gives the creditor execution *de bonis testatoris, et si non, de bonis propriis.*

The same principle that governed in the former, enters into and qualifies the existing statutory mode of proceeding against the land, and the same and no other defences are open to the *terre-tenant* in either. His relations to the adversary party, remain the same and unchanged. If he could not before, neither can he now, raise issues concluded by the judgment, unless the judgment itself be impeached.

In the present case, the defendants who have the inheritance, seek to disregard the judgments as nullities, and to set up a presumption under the old law, raised from the lapse of time, of full payment of the bonds, reduced to judgments a short time before the commencement of this suit, and just after the expiration of ten years from their maturity, deducting the time of the suspension of the acts of limitation, whereof during six years,

there was no administration on the debtor's estate after his death, and no one to sue. In *Moore* v. *Edwards,* 92 N. C., 43, it is held, that in a creditors' suit, one of them cannot go behind a judgment, recovered in another action by a different creditor against the administrator, and contest the validity of the original claim, because the cause of action was then barred by the statute of limitations and might have been defeated, had the defence been set up; though any creditor may resist another's demand, when in consequence of a deficiency of assets to pay all, he is interested in having it excluded, and pleads the bar. *Wordsworth* v. *Davis,* 75 N. C., 159; *Oates* v. *Lilly,* 84 N. C., 643; *Dobson* v. *Simonton,* 93 N. C., 268.

If an interested creditor may not go behind the subsisting judgment, why shall the *terre-tenant* be allowed to do so, when there is no suggestion of fraud, collusion, or any unfairness practiced in procuring it?

So a judgment against an administrator, is evidence of the debt, both against him and the sureties on his bond, when put in suit against all. *Armistead* v. *Harramond,* 4 Hawks, 339, decided before the act of December 31st, 1844, and *Strickland* v. *Murphy,* 7 Jones, 242, decided since its passage. The Code, §1345. And why should it be otherwise, when the debtor's own land is to be made liable?

We distinguish this case from that of *Bevers* v. *Parks, supra,* in that the defence arose after judgment, and its validity was not called in question as a binding judicial determination, while here the judgment itself is treated as a nullity. We cannot extend the former ruling to the facts of this case. There is error, and there must be a new trial. Let this be certified to the Court below.

Error.                                        Reversed.