*ANDREW SYME, Adm'r, &c., in behalf of himself, &c., v. THOS. BADGER, Adm'r, et als.

*Devastavit—Cause of Action—Statute of Limitation.*

1. When an action is brought against an executor or administrator for a devastavit, and a judgment is obtained against him, the cause of action accrues at the time of the qualification, and the law in force at the time governs, but when the action is brought after the death of the executor, the cause of action accrues as against his real and personal representative, when such representative qualifies and gives notice to creditors.

2. A creditor may sue the real representative of a deceased debtor to subject the descended lands to the payment of his debt, where there is danger of loss from delay, without waiting for the settlement of the personal estate by the administrator.

3. Where it is sought to subject the descended lands in the hands of the heir to the payment of the ancestor's debts, he has all the defences since the Act of 1846, which changed the procedure, that he would have had to a *sci. fa.* before that Act, with the qualification that when the action was brought against the heir within seven years after the qualification of the personal representative, on a judgment already obtained against the personal representative, the heir cannot plead that the demand on which the judgment was rendered was barred, unless he can show that the judgment was obtained by fraud or collusion.

4. Under the provisions of the Act of 1715, if the debt be due at the death of the debtor, an action must be brought within seven years from the death, otherwise both the heir and the executor will be discharged, and if the action arose after his death, the action must be brought within seven years after the cause of action arose, or the Act will be a bar, provided the personal representative has paid over the assets.

5. By the provisions of *The Code*, §153, sub-sec. 2, an action is absolutely barred against both the personal representative and the heir, unless it is brought within seven years after the qualification of the personal representative and the advertisement for creditors, and nothing will defeat its operation, except the disabilities mentioned in *The Code*, or such fraud or other matter of equitable nature, as would make it against conscience to rely on the statute.

*MERRIMON, J., having been of counsel, did not sit on the hearing of this case.

6. Where an action was brought in 1877, against the administrator of a
   deceased executrix, charging a devastavit, which pended until 1885,
   when a judgment was rendered in favor of the plaintiff, who then
   at once brought an action to subject the lands in hands of the heir
   to the payment of the judgment; *It was held*, that the action was
   barred.

(*Blount* v. *Parker*, 78 N. C., 128; *Spruill* v. *Sanderson*, 79 N. C., 466;
   *Rayner* v. *Watford*, 2 Dev., 338; *Godley* v. *Taylor*, 3 Dev., 179;
   *Spear* v. *James*, 94 N. C., 417; *McKeithan* v. *McGill*, 83 N. C., 517;
   *Cox* v. *Cox*, 84 N. C., 138; *Lawrence* v. *Norfleet*, 90 N. C., 533;
   *Worthy* v. *McIntosh*, 90 N. C., 536; cited and approved. *Leach* v.
   *Jones*, 86 N. C., 404; *Hughes* v. *Whitaker*, 84 N. C., 640; *Badger* v.
   *Daniel*, 79 N. C., 386; *Lilly* v. *Wooley*, 94 N. C., 412; distinguished
   and approved).

This was a CIVIL ACTION, tried before *Connor, Judge,* at
April Civil Term, 1886, of WAKE Superior Court.

The complaint alleges in substance, that George E. Badger
died in the county of Wake in 1866, leaving a last will and
testament, which was duly proved at the May Term, 1866, of
the Court of Pleas and Quarter Sessions of said county, and
that at the same Term, Delia H. Badger, the executrix named
in the said will, duly qualified as such.   That the said exec-
utrix, Delia H. Badger, died in November, 1876, without
having fully administered the estate of her testator, and that
thereafter, to-wit, on the 5th day of April, 1877, David M.
Carter was duly appointed and qualified administrator *de
bonis non,* with the will annexed, of the said George E. Bad-
ger, by the Probate Court of Wake county.   That thereafter
the said D. M. Carter died in 1879, intestate, without having
fully administered the estate of said George E. Badger, and
on the 10th day of March, 1879, the plaintiff Andrew Syme
was duly appointed and qualified by the Probate Court of
Wake county, administrator *de bonis non,* with the will
annexed, of the said George E. Badger.   That on the 2d
day of January, 1877, the defendant Thomas Badger was
duly appointed administrator of the estate of the said Delia

H. Badger, by the Probate Court of Wake county, and duly qualified as such. That the said Delia H. Badger, at the time of her death, was accountable to the estate of her testator, George E. Badger, for a large sum of money, which had come, or should have come into her hands as executrix, and for the collection of which, D. M. Carter, then administrator of George E. Badger, and others, commenced an action in the Superior Court of Wake county, on the 11th day of March, 1878, against the defendant Thomas Badger, administrator of Delia H. Badger, and others, in which action the plaintiff Andrew Syme, administrator, &c., was duly made a party upon the death of the said David M. Carter, administrator, &c., and thereafter such proceedings were duly had in the said action, that at August Term, 1885, of said Court, a judgment was rendered in favor of this plaintiff against the defendant Thomas Badger, administrator of Delia H. Badger, for the sum of $5,738.69, and costs, together with interest on the sum of $4,838.19 from the 31st day of August, 1885, until paid. That at the time of her death, the said Delia H. Badger was possessed of personal property not exceeding $1,500 in value, and was the owner in fee of certain real estate in the city of Raleigh, known as lot No. 10 in the plan of the city. That she left her surviving Joseph J. Williams, Richard C. Badger, Thomas Badger, George Badger, Sherwood Badger and Edward S. Badger, and Annie H. Faison, wife of Paul F. Faison, and Mary Hale, wife of Peter M. Hale, her only children and heirs at law. That within two years from the grant of letters of administration on the estate of the said Delia H. Badger, the defendant William R. Poole purchased the share and interest of R. C. Badger in her real estate, and likewise, within two years, the defendant Henrietta Martin purchased the share and interest of Mary Hale in the said real estate. That shortly after the death of the said Delia H. Badger, and prior to November 28th, 1878, Jos. J. Williams died intestate in the county of

Wake, leaving a widow, Eliza T. Williams, and the following children, to-wit, Margaret, Jos. J., Elizabeth, Sarah C., Alex. H., and Annie H. Williams, who are his heirs at law. All the said children were infants at the time of his death, and were then, and now are, residents of the State of Florida, and neither the said widow nor children have any property in this State. That on the 28th of November, 1878, a special proceeding for partition was commenced in the Superior Court of the county of Wake, wherein Paul F. Faison and wife Annie H. Faison, Wm. R. Poole, Sherwood and Edward Badger, and Thos. D. Martin and wife Henrietta P. Martin, were plaintiffs, and Thomas and George Badger, and Margaret, Jos. J., Elizabeth, Sarah C., Alex H. and Annie H. Williams, were defendants. The said special proceeding was instituted for the purpose of having the real estate of the said Delia H. Badger, in the city of Raleigh, partitioned among the plaintiffs and defendants as tenants in common thereof. Under the orders and judgments of the Court, duly rendered in the said special proceeding, Paul F. Faison, commissioner of the Court, sold the said real estate on the 22d day of March, 1879, in several parcels, for the aggregate sum of $11,300.00, and the said sales were duly reported to the said Court on the 25th day of March, 1879, and thereafter, to-wit, on the 7th day of April, 1879, confirmed by the said Court, and under the direction and judgment of said Court, deeds were subsequently made to the respective purchasers of the said real estate by the said commissioner, and the proceeds of said sale divided among the parties to said proceeding. That of the proceeds of the said sale, the sum of $1,497.62 was paid to Wm. R. Poole, the purchaser of the interest of the said R. C. Badger in the said real estate. The said sum was paid in sums as follows: $251.39 in April or May, 1879; $442.59 April 9th, 1880; $421.01 in April, 1881, and $382.93 in April, 1882. That the sum of $1,497.62 was paid to Henrietta P. Martin, the

purchaser of the interest of Mary Hale, as follows: $251.39 in April or May, 1879; $442.59 April 9th, 1880; $421.01 in April, 1881, and $382.63 in April, 1882. That shortly after the death of the said Jos. J. Williams, the defendant Jos. A. Haywood was duly appointed and qualified as administrator on his estate, and thereafter, upon a petition filed in the cause, and an order therein, the interest of the estate of the said Jos. J. Williams in said real estate, being the same in amount as that paid to Wm. R. Poole and Henrietta P. Martin respectively, was paid (less the sum of $51.91 paid to Eliza Williams as the cash value of her dower as the widow of J. J. Williams,) to the said Jos. A. Haywood, administrator of Jos. J. Williams, to make assets to pay the debts of his intestate; said sum was paid in like sums and at the same time as those paid to Wm. R. Poole and H. P. Martin. That after the institution of the said Special Proceeding, Edward S. Badger died intestate, and Sherwood Badger was duly appointed and qualified as his administrator, and upon a petition filed in said cause, and an order of the Court made thereon, the share of the said Edward S. Badger (except the sum of $251.39, paid to him in his life-time,) was paid in like sums and at like times as the others, to the said Sherwood Badger, administrator, &c., to make assets to pay the debts of his intestate. That the share of Geo. Badger, except the sum of $251.39, paid to him in April or May, 1879, was paid to the defendant Annie H. Faison, and since the receipt thereof, the said George Badger has died intestate in the State of New York, leaving no property in this State. That the share of the defendant Sherwood Badger was paid to him in like sums and at about the same dates as the others That Thomas Badger became the purchaser of a portion of the said real estate, which is fully described in the complaint, and that at the time of his purchase he had notice of the liability of the said Delia H. Badger to the estate of her testator, George E. Badger. That the said

Thomas Badger is still the owner of the said property, subject to a mortgage executed by him to the defendant Bettie Strange, now the wife of J. W. Atkinson, the said mortgage having been executed pending the suit wherein D. M. Carter, administrator, &c., was plaintiff and Thos. Badger *et als.* were defendants. That Annie H. Faison became the purchaser of a portion of the said real estate, (set out in the complaint by metes and bounds,) and that she purchased with notice, &c., and is still the owner of said real estate, subject to a mortgage executed to the defendants Henry Hentz, Theodore Eastmond, Peter A. Leman, L. S. Hentz and D. C. Hipkins, said mortgage having been executed pending the said action of D. M. Carter, administrator, &c., *v.* Thos. Badger, administrator, &c., *et als.* That the defendant W. W. Vass became the owner of a portion of said real estate, (described by metes and bounds in the complaint,) and is still the owner thereof, and that he purchased with notice, &c. That the defendant Henrietta P. Martin is possessed of a large separate estate in her own right.

The plaintiffs ask judgment that the land described in the complant, as purchased by the defendants Annie H. Faison, W. W. Vass and Thos. Badger, be sold and the proceeds applied to the payment of the judgment against Thos. Badger, adm'r, &c.

That the plaintiffs recover of Wm. R. Poole, Henrietta P. Martin, Sherwood Badger, Sherwood Badger, adm'r of Ed. S. Badger, and Jos. A. Haywood, adm'r of Jos. J. Williams, the sums paid to them respectively from the proceeds of the sale of said real estate, with interest from the date of the receipts of the several sums.

The defendants, except Jos. A. Haywood, administrator of Jos. J. Williams, file separate answers and amended answers, and among other and various defences relied on in the respective answers, there is one of the statute of limitations, common to them all, and fully set out in each answer. His

Honor held that the statute was a bar, and gave judgment for the defendants, from which the plaintiffs appealed.

*Messrs. John Devereux, Jr.,* and *R. H. Battle,* (*Messrs. Sam'l F. Mordecai* and *Jos. B. Batchelor* were with them on the brief), for the plaintiffs.

*Messrs. A. W. Haywood, Spier Whitaker, John Gatling, W. H. Pace, C. M. Busbee,* (*Mr. Ernest Haywood* was with them on the brief), for the defendants.

DAVIS, J., (after stating the facts).   George E. Badger died in 1866, and Delia H. Badger qualified as executrix of his will in May, 1866.   Mrs. Badger died in November, 1876, and Thos. Badger qualified as her administrator on the 2d of January, 1877.   This action was commenced on the 19th day of September, 1885, and all the defendants rely upon the seven years statute of limitation as a bar.

Section 153, sub-section 2, of *The Code,* prescribes for the commencement of action "by any creditor of a deceased person, against his personal or real representative, within seven years next after the qualification of the executor or administrator and his making the advertisement required by law, for creditors of the deceased to present their claims, where no personal service of such notice in writing is made upon the creditor; and a creditor thus barred of a recovery against the representative of any principal debtor, shall also be barred of recovery against any surety to such debt."

This section, if applicable to the present action, is a complete bar to the plaintiffs' recovery.   But the plaintiffs insist, that the cause of action is the devastavit of Mrs. Badger, as executrix, and relates back to the date of her qualification as such, and that it is governed by the law as it was prior to the 24th of August, 1868.   *The Code,* §136, provides, that "this title," which includes §153, "shall not extend to actions commenced before the 24th day of August, 1868, nor to

cases where the right of action accrued before that date, but the statutes in force previous to that date shall be applicable to such actions and cases."

When did plaintiffs' right of action accrue against the personal or real representative of Mrs. Badger? It is difficult for us to conceive of an answer to this question, that would fix the period prior to the existence of such a representative.

This action is against the real representatives of Mrs. Badger, or their assignees, to subject her real estate, or its proceeds, to the payment of a judgment rendered in favor of the plaintiff Andrew Syme, administrator *de bonis non,* &c., of George E. Badger, against her administrator, Thomas Badger, for a balance found to be due to her testator upon a settlement of her account as executrix.

In *Leach* v. *Jones,* 86 N. C., 404; relied on by the plaintiffs to sustain the position that this cause of action relates back to the date of Mrs. Badger's qualification as executrix, the question was, as to whether, in that case, the defendant Eliza H. Jones was entitled to a homestead in the land in controversy. She had qualified as executrix of L. Jones, deceased, in 1865, and upon a reference, there was a report made and confirmed in 1878, upon which she was adjudged guilty of a devastavit of the assets of her testator, and the judgment was against her, both as executrix and individually, by reason of the devastavit. She insisted, that she was not fixed with the devastavit until the report of the referee was confirmed by the judgment against her in 1878; the plaintiff, on the other hand, insisted that the devastavit was committed between the years 1865 and 1867, within which period it was her duty, as the law then was, to settle the estate. The Court held that it was immaterial to inquire when the devastavit was committed, if prior to the commencement of the action, for the liability of the defendant attached upon her qualification as executrix in 1865.

If this action had been commenced against Mrs. Badger as executrix in her life-time, and a judgment rendered against her as executrix, and individually, for the devastavit of the assets of her testator, the case of *Leach* v. *Jones* would settle it, for she could not have claimed the benefit of the Act of 1868. The law by which she was governed was that in force when she qualified as executrix; the law subjecting her personal and real representatives to the payment of her debts, is that in force when her administrator qualified and gave the required notice.

It is due and just to the memory of Mrs. Badger, that it should be stated that it is conceded by all, that the misapplication of the assets of her testator was under advice upon which she relied, and under the mistaken, but honest belief, that being a creditor as well as a devisee of her testator, and the devise and bequest to her having been intended by him, and so expressed in his will, as a payment and discharge of what he owed her, she had the right to use and apply the assets as she did, and there was no wrong intent on her part. See the case of *Syme, Adm'r, &c.,* v. *Badger, Adm'r, &c.,* 92 N. C., 706.

But the plaintiffs insist, that even if the action is governed by *The Code*, §153, sub-sec. 2, it is not barred, because it is in the nature of an equitable *fi. fa.* in aid of the judgment rendered at August Term, 1885, in the case of *Andrew Syme, Adm'r, &c., et als.,* v. *Thomas Badger; Adm'r, &c., et als.,* and for this he relies: 1st. Upon the case of *Hughes* v. *Whitaker*, 84 N. C., 640. That case is distinguishable from this. It was commenced in 1877, by the creditors of the deceased debtor, L. H. B. Whitaker, against his executors and others, "to secure the assets, personal, and such as were derived from a sale of the devised lands, which it is charged in the complaint, under a fraudulent combination among the defendants, have been illegally disposed of and appropriated to their own use." The prayer is, that this pretended alienation

be declared void, and the property secured and placed in the hands of a receiver, to meet the claims of the creditors.

The defendants, among other defences, relied upon the statutory bar of seven years, and to this the plaintiff replied that an action was commenced in the Superior Court of Law of Northampton county in 1867 or 1868, and within three years after the qualification of the defendants as executors, to recover, &c., and that the said action is still pending. SMITH, C. J., says: "Associating the facts alleged in the complaint, and in the replication, as the cause of action, the present suit aims to get hold of and secure funds belonging to the estate of the deceased debtor, which by alleged fraudulent contrivances, have passed into the hands of the other defendants, and which ought to be applicable to the recovery of the plaintiff, when his suit is favorably determined. * * * * * It is therefore in aid of and not a substitute for the pending suit. If the plaintiff, upon obtaining judgment in his first action, and failing to make his debt out of the executors, can then pursue the fraudulently alienated estate, and no delay can be imputed to defeat him, why may he not now pursue and secure it, to await the result of his other suit, so that it may not become fruitless? * * * * The pleadings do not show when the fraudulent alienations were made, whether after the first action was commenced or before, nor when the fraud was first discovered, and the primary action for relief in cases where the Courts of Equity alone could afford it, as in the present case, is only barred after the lapse of the limited time from the discovery, which alone puts the statute in operation." For this he cites C. C. P., §33, par. 9, (*The Code*, §251, par. 9,) *Blount* v. *Parker*, 78 N. C., 128, and *Spruill* v. *Sanderson*, 79 N. C., 466. In the case before us, there was no fraud or equitable element interposed to prevent the operation of the statute.

The point is not made, but in that case the administration

was taken out prior to 1868, and it was not governed by the present statute.

2. The plaintiff relies upon *Badger* v. *Daniel*, 79 N. C., 386, and *Lilly* v. *Wooley*, 94 N. C., 412. In the latter case, there is no reference in the opinion to the seven years statute, and the point was not before the Court, but the well settled doctrine is affirmed, that in the administration of the estate of a deceased debtor, his personal property must be first applied and exhausted before resort is had to the real estate. In that case, the obligors on the administration bond, except one, were insolvent, and he, though possessed of property in, and a resident of another State, had none in this. The Court below held, that this was a bar to any re-covery against the debtor's real estate, until the remedy against the solvent surety had been exhausted. This was held to be error, and this Court declared that the creditor residing in this State, need not pursue his remedy upon the administration bond against a surety to it in another, and exhaust this source, before he can resort to the debtor's real estate found in this State.

It was an action in the nature of a creditor's bill, brought against both the administrator and the real representative, for the purpose of subjecting first, the personal property, and if insufficient, then the real property of the debtor to the payment of debts, and is authority for the position that the debtor may, where it is necessary to guard against the danger of loss from delay, sue the personal and real representative in the same action, without waiting an indefinite period for the settlement of the personal estate, before proceeding against the heir.

The case of *Badger* v. *Daniel* throws no light upon the construction to be placed upon the statute under review. That was an action brought in 1871, upon a cause of action prior to 1868, and was clearly governed by the statutes in force prior to that date.

All statutes of limitation in this State were suspended from May 11th, 1861, to January 1st, 1870, and seven years had not elapsed from the latter date, before Whitfield was made a party to the suit, which was in 1875. It is true that ROD-MAN, J., says, that " as his liability did not or does not accrue, until a failure of the personal estate derived from the testa-tor to pay the plaintiff's debt, he is not protected by the statute." What statute ? Not §153, sub-sec. 2, of *The Code*, for that did not apply to the action, as it was governed by the law as it was prior to August 24th, 1868, which was the Act of 1715, which declared that: " Creditors of any deceased person shall make their claims within seven years after the death of such debtor, otherwise such creditor shall be barred." Rev. Code, chap. 65, §11.

By re-enactment from time to time, this continued to be the law down to the 24th of August, 1868, and was the sub-ject of careful and learned consideration in the cases of *Ray-ner* v. *Watford*, 2 Dev., 338 ; and *Godley* v. *Taylor*, 3 Dev., 179 ; and the construction then received, continued to be the set-tled law of this State as long as that Act remained in force. As the present act, by its express terms, fixes the same limit for actions against the real representative as against the per-sonal, it may not be out of place to call attention to these cases.

In the former case, RUFFIN, J., said : " The Act of 1715 is in terms an unqualified bar, without any saving or excep-tion in favor of any incapacity whatever. It seems to have been designed to be emphatically a statute of repose in favor of dead men's estates, without a single exception " And again, speaking exclusively for himself, he said, " unless the death of the debtor be the *terminus*, if I may use that expres-sion, from which the time runs, there is no limitation what-ever. * * * The only limitation in the statute, is from the debtor's *death ;* and if the period begin not then, it can have no beginning nor ending, within this act."

Again, in the case of *Godley* v. *Taylor*, the same eminent Judge, in his dissenting opinion, after presenting his own views as to the absolute bar of the statute, gives his adhesion to the law as settled by the Court, which he declares to be as follows: "That if the debt be due at the death of the debtor, claim must be made within seven years from the death, otherwise, both the heir and executor are discharged; and that if the action arise after the death of the debtor, suit must be brought within seven years from the time the action accrued, or the *heir and executor* will in that case be also discharged; and if suit is brought against the executor within seven years after it arose, but after the expiration of the seven years from the death of the debtor, and the executor hath, at the time of suit brought, not paid over the assets, he shall answer the demand; but if he hath paid them over, he shall have the plea of fully administered found for him. But how it will be with the heir in this last case, is yet to be determined; though I take it, he is to be bound, in case there be no personal estate in anybody's hands, provided he be sued by *sci. fa.* within seven years from the falling due of the demand, when that happens after the death of the ancestor." The Act of 1846, changing essentially the mode of procedure to subject the real estate of the deceased debtor to the payment of his debts, was passed after the decision in *Godley* v. *Taylor*, but that act did not in any way affect the statute of limitations, and any defence which the heir might have had to the *sci. fa.*, was equally available upon the application of the executor or administrator for license to sell real estate to make assets, with the qualification that where the action was brought against the heir within seven years after the qualification of the executor or administrator, he could not interpose the bar of the statute to a demand which had been reduced to judgment against the executor or administrator, unless he could show that it had been obtained by fraud or collusion. This

is clearly established by the case of *Speer* v. *James*, 94 N. C, 417; and the cases there cited. That was a creditor's suit, prosecuted against the administrator and heir at law. Administration was granted on the 21st day of August, 1879, and the action was commenced on the 18th day of January, 1882, (within seven years,) and the question now before us was not presented in that case, and this is the first time this Court has been called upon to construe §153, sub-sec. 2, so far as it relates to actions against the real representative. It has often been considered in actions against the personal representative, and it seems to be well settled, that when seven years have transpired after the qualification of the executor or administrator, before the commencement of the action, and due advertisement has been made as required by law, the statute is a bar. *McKethan* v. *McGill*, 83 N. C., 517; and the cases there cited; *Cox* v. *Cox*, 84 N. C., 138; *Lawrence* v. *Norfleet*, 90 N. C., 533; *Worthy* v. *McIntosh*, 90 N. C., 536.

In the last cited case, Smith, C. J., says: "The present statute is an absolute and unqualified bar, when its conditions are complied with, and gives, as was intended, a repose to the estate, and puts an end to the claims against it, unless suspended under the provisions of §164 of *The Code*."

If this be the proper construction of the statute in respect to the "personal representative," it is difficult to see how the same language in the same section, and same sentence, can admit of a different construction with respect to the real representative. Reasoning from legislation upon a kindred subject, the construction should certainly be as strong in favor of the heir as the personal representative, for it is provided by statute, that conveyances made by the heir "to *bona fide* purchasers for value and without notice, if made after two years from the grant of letters, shall be valid even as against creditors." *The Code*, §1442.

It seems to have been the purpose of the Legislature not to leave obstructions in the way of the free alienations of lands for a long period. There is but one period fixed by the statute from which it begins to run to bar an action by the creditor of a deceased person against his personal or real representative, and that is the qualification of the executor or administrator and his making the advertisement required by law.

It must begin to run then or never, and nothing will defeat its operation, except the disabilities mentioned in *The Code*, or such fraud or other matter of an equitable nature as would make it against equity and good conscience to rely upon the statute.

There are no disabilities or other equitable ground interposed in this case. The Court below held that the seven years statute of limitation was a bar, and gave judgment for the defendant. There was no error. Judgment affirmed.

Let this be certified.

No error. Affirmed.