JOSEPH BRITTAIN, Admr., v. JNO. A. DICKSON et al.

*Executors and Administrators — Real Estate — Assets—Judgments—Limitations—Heirs—Creditors.*

1. Where an administrator qualified in 1862 and died in 1869, and an administrator *de bonis non* was appointed in 1886, the estate must be settled according to the law as it stood before July 1st, 1869.

2. The authority of an administrator *de bonis non* relates back to the death of his intestate, but he can not be held responsible for assets which did not come into his hands or by reasonable diligence he could not have collected.

3. Where it is *clear* that an administrator could not recover, he ought not to bring suit.

4. Judgments against the personal representative cannot be questioned by the heirs or next of kin unless for fraud or collusion.

5. An estate is open until it is settled ; *stale* claims are as good as others unless barred by the statute.

6. Where the heirs and next of kin allowed six years during the life of the administrator to elapse, and waited twelve years for an administrator *de bonis non* to be appointed, and no effort was made to procure a settlement of the estate, the law will not help them except in cases prescribed by statute.

7. Specialties, when reduced to judgment, are merged, and the statute barring judgments will then apply.

8. The statute governing the presentation of claims to an administrator applies also when the claim has been reduced to judgment ; and when judgment was obtained and docketed in 1869 against an administrator, and no effort was made to assert this claim until 1886 : *It was held,* that it was barred by the ten years statute of limitation unless the claim was admitted by administrator, or action was brought upon it, in one year after the expiration of the ten years on the appointment of administrator as prescribed by statute.

9. Where it appeared that a former administrator was insolvent, his bond lost and sureties unknown : *It was held,* that it was not necessary for the administrator *de bonis non* to bring an action against the administrator of such administrator before making application to make real estate assets.

10. Ordinarily any controversy respecting a debt against the estate should be determined before granting license to sell for assets.

This is an application for a license to sell land to make assets to pay debts, &c.

The following is so much of the case stated on appeal as need be reported:

John A. Dickson died on the 18th day of October, 1861. W. S. Moore administered on his estate on the ____ day of August, 1862. Moore filed an administration bond which is lost, and cannot after due diligence be found, as many of the records of Burke County were destroyed during the late war. Moore died on the ____ day of _____, 1869. Jos. Brittain was appointed administrator *de bonis non* of John A. Dickson on the 23d day of December, 1886. There was no administration on said estate from Moore's death, in 1869, until the appointment of plaintiff, in December, 1886.

Dickson left a large personal estate, a part of which was laid off to the widow as a year's allowance, but sufficient personal property went into the hands of Moore, his administrator, to pay all the debts against said estate. The estate of W. S. Moore is totally insolvent and has been since several years before his death and nothing can be made out of it. No bond of Moore as administrator can be found, owing, prob-. ably, to the destruction of the records of Burke County in 1865, and the names of the sureties on such bond are unknown and cannot be ascertained. There is no personal property in the hands of Jos. Brittain, administrator *de bonis non*, nor has anything come to his hands since his appointment with which to pay debts. T. G. Walton, executor of Thomas Walton, recovered a judgment *quando* against Moore, administrator of Dickson, on the 24th day of May, 1869, for $391 on specialties filed of date 1855 and 1856, with interest on $214.10 from the 24th day of May, 1869, until paid, and costs as shown by the Minute Docket at that term of the Court. The Judgment Docket of that term of the Court shows said judgment to be a judgment *absolute*.

S. M. Roderick recovered judgment against Jos. Brittain, administrator of Dickson for $139.30, with interest on $49.87 from 8th of August, 1887, till paid, and cost.

S. McD. Tate recovered judgment against Jos. Brittain, administrator of Dickson, for $179 15, with interest on $68.38 from 24th January, 1887, till paid, and cost.

These judgments are unpaid and are valid claims against the estate of Dickson.

The Court held that the judgment recovered at _____ Term, 1889, of Burke Superior Court in favor of T. G. Walton against W. S. Moore, administrator of John A. Dickson, was a judgment absolute, and not a judgment *quando*, as found by the referee.

To this ruling the plaintiff excepted.

The Court ruled that the judgment in favor of Walton against Moore, administrator, was not barred by the statute of limitations, and was not presumed to be paid by the lapse of time, and overruled the defendants' plea of the statute of limitations and presumptions.

To this ruling of the Court—overruling the plea of the statute of limitations and presumptions and holding that said judgment was not barred—the defendants again excepted.

The defendants insisted that, upon the facts found, the plaintiff was not entitled to have the land sold for assets.

The Court overruled the defendants' objection, and the defendants again excepted.

Judgment in favor of plaintiff, to which the defendants excepted and appealed.

*Mr. I. T. Avery*, for plaintiff.
*Mr. S. J. Ervin*, for defendant.

MERRIMON, C. J.—after stating the case: The intestate of the plaintiff died in 1861, and letters of administration on

his estate were duly granted to the former administrator in August, 1862, who afterwards died in 1869. The plaintiff was, afterwards, on the 23d day of December, 1886, appointed and qualified as administrator *de bonis non* of the same intestate. The estate must, therefore, be settled according to the law applicable in such cases next prior to the first day of July, 1869, except as "to the Courts having jurisdiction of any action or proceeding for the settlement of an administration, or to the practice and procedure therein." *The Code,* §§ 1433, 1476; *Glover* v. *Flowers,* 101 N. C., 134; *Gaither* v. *Sain,* 91 N. C., 304; *Glover* v. *Flowers,* 95 N. C., 57; *Dancy* v. *Pope,* 68 N. C., 147.

The administration of the estate of the intestate was not completed by the first administrator; he left it open and unsettled. Hence, it became, and continues to be, the duty of the plaintiff administrator *de bonis non* to complete the administration in all respects, and, to that end, his power, rights, authority and duties relate back to the death of his intestate. He is bound only by the lawful acts done by his predecessor in and about the estate. It is his duty to get possession of all the remaining personal property, including rights and credits, to sell the property, collect the debts due and apply the money thus realized to the discharge of all unpaid debts and liabilities with which the estate in his hands is properly chargeable, and in the orderly course of administration. He should also particularly require the administrator or executor of the first administrator to account to him for all property and effects of his intestate that he had not properly administered, and, if need be, compel him to do so by appropriate legal steps. If, however, the first administrator had wasted such assets, or made other default, and he, or, if he be dead, his estate, be clearly and certainly insolvent, and if the sureties to his administration bond be so insolvent, or, if he gave such bond and the same was lost or destroyed, and the sureties could not, by active diligence,

be ascertained, then, the facts being clear, it would not be necessary that he should bring action, because it would be fruitless and put the estate to useless costs. The administrator should, in such respects, be very vigilant, otherwise he would be held accountable for his *laches.*

In this case it is found as facts that the former administrator was insolvent at the time of his death; that he gave a proper bond, with sureties; that the bond was lost or destroyed, probably by the casualties of war, and that it cannot be ascertained who were the sureties thereto. If this be so, it would be worse than useless for the plaintiff to bring his action, thus causing fruitless delay and costs. Why—to what end—bring suit? In such case, it is wiser and better in every respect to proceed in the course of administration as if the matter had been settled by action. But, to warrant such course, the facts should be clear and satisfactory.

The judgments of recent date mentioned, other than that of Thomas G. Walton, seem not to be questioned, nor can they be, by the defendants as the heirs of the intestate, unless because of fraud or collusion, and, so far as appears, they are properly chargeable against the estate in the hands of the plaintiff. If there are no personal assets of the intestate, or not sufficient to pay them, then it is the plaintiff's duty to apply for and obtain a license to sell the land descended to the heirs, or so much thereof as may be necessary to make assets to pay the debts remaining unpaid. *Speer* v. *James,* 94 N. C., 417; *Syme* v. *Badger* 96 N. C., 197.

It is earnestly insisted in the argument that the debts upon which these judgments are founded were of long standing and stale, and, therefore, the creditors, after such long lapse of time, are not entitled to have them paid. This contention is not well founded. The law contemplates, intends, and requires that the estate of every decedent, if he have any, shall be duly administered, and it remains open, unsettled, and to be settled, until the latter shall be done.

Mere lapse of time in such cases cannot affect the rights of creditors or others, otherwise than as may be prescribed by statute. That an estate is not settled and closed within a reasonable time, is because of the neglect or *laches* of those interested in it as next of kin, or legatee, or heir, or devisee, or creditor and the law will not encourage such neglect by helping a party who seeks to take benefit of it. It is the duty of the parties interested to see that the estate is so administered and closed according to law, and if they will not they must suffer such prejudice as may happen to them by reason of their *laches*, however the same may arise. Here the next of kin and the heirs of the intestate allowed six or seven years to lapse pending the lifetime of the first administrator, while, it seems, he wasted the assets, or allowed them to be dissipated—that he ought to have applied. He died, and no administrator *de bonis non* was appointed until after the lapse of twelve years. The bond of the first administrator had been lost or destroyed, and the name of the sureties thereto had been forgotten. No effort was made, it seems, within a reasonable time, or at all, to restore the lost record as to the appointment of the administrator and his bond. All this was gross neglect, and the creditor who, on that account, fails to establish his debt and have it paid, must suffer loss, and so must the heirs, if they cannot make good their defence. The law will not help them as to time, except in the case and the way prescribed by the statute, *Whit* v. *Ray*, 4 Ired., 14.

The judgment of the creditor, Thomas G. Walton, was obtained on the 24th day of March, 1869, and it must be treated here, and for the present purpose, as an absolute judgment, because the Court so held it to be. This was excepted to by the plaintiff, but he did not appeal, and if he assigned error it is not before us for review and correction. If the plaintiff intended to insist upon his objection he should have appealed. He is not entitled to the benefit

of the defendant's appeal, except as he may in some way be benefitted thereby incidentally.

The specialties upon which the last mentioned judgment was founded were merged therein, and it became a new *causa litis,* and as contemplated by the statute (*The Code,* § 136), it was subject to the statute (*The Code,* § 152) barring actions on judgments after the lapse of ten years after the rendition of the same. *Gaither* v. *Sain,* 91 N. C, 304; *Smith* v. *Brown,* 99 N. C., 377.

Hence, any action on this judgment was barred by the statute, as contended by the defendants, unless it was suspended by reason of the fact that there was no administration of the intestate from 1869 until the 23d of December, 1886, when the plaintiff was appointed and the judgment creditor brought his action within one year next after the issuing of the letters of administration to him founded upon such judgment, or unless the judgment creditor filed his claim within the time just mentioned with the plaintiff, and the same was admitted by him as prescribed and allowed by the statute (*The Code,* § 164). This statute provides, that "if a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his personal representative after the expiration of that time, and within a year after the issuing of letters testamentary or of administration. But if the claim upon which such cause of action is based be filed with the personal representative within the time above specified, and the same shall be admitted by him, it shall not be necessary to bring an action upon such claim to prevent the bar," &c.

Although the cause of action—the judgment—under consideration does not come within the letter of this statutory provision, it does within its spirit and purpose. It is not reasonable to suppose that the intention was to allow the

creditor to so sue the first administrator and not have the like remedy against the administrator *de bonis non.* The creditor could not bring his action against the administrator of an administrator, but against the administrator *de bonis non* of the intestate of the first administrator. It is so decided, certainly in effect, in *Smith* v. *Brown,* 99 N. C., 377; *Dunlap* v. *Hendley,* 92 N. C., 115.

It does not appear from the record whether the judgment was barred or not. It may be that it was filed with the plaintiff in apt time and admitted by him. It must, therefore, be re-referred to the referee to find the material facts and report the same to the Court below for its further action.

It appears that the former administrator was "totally insolvent"—had been several years before his death—and his estate had been so ever since that time; his bond as administrator was lost or destroyed and his sureties thereto were unknown. For the reasons already stated, it was not necessary to bring an action against his administrator before making the present application. *Badger* v. *Jones,* 66 N. C., 305; *Latham* v. *Bell,* 69 N. C., 135; *Smith* v. *Brown, supra; Lilly* v. *Wooley,* 94 N. C., 412.

It does not appear, except by rather vague inference, that there are no personal assets of the intestate. It is found, merely, that none have come into the hands of the plaintiff. It is not found, as it should be, that he made diligent search and inquiry and could find none.

The exceptions, other than those embraced by what we have said, are immaterial, and we need not advert further to them.

If there are no personal assets, or not sufficient, the plaintiff is entitled to a license to sell so much of the real estate as may be necessary to make sufficient assets to pay the debts ascertained to be due and unpaid; but any controversy in respect to any particular debtor's debts, especially if the same

be for a considerable amount, should ordinarily be determined before granting the license. Otherwise, the Court might. direct a larger quantity of land to be sold than necessary.

The judgment must be set aside, and further steps taken in the proceeding in accordance with this opinion.

Error.