JACKSON ELLIS and wife, and others v. DAVID A. SCOTT.

A, who was a guardian prior to the war, in 1867 resigned his guardianship and procured D to be appointed in his stead, in order that he might settle his account with his wards, under the provisions of the Act of 1866; D filed a petition against A, calling upon him for a settlement, before a Judge of the Superior Court. A filed an answer, setting forth his account, and claiming a reduction of his liability by reason of the depreciation of Confederate money, &c. The petition and answer were both filed by A's counsel, who also drew the receipts given by the wards after the adjudication of the cause. At the same term, the petition and answer were submitted to the presiding Judge, and he rendered his decision thereon. Immediately thereafter D resigned his guardianship, and A was re-appointed; it was admitted that D was appointed only for the purpose of the settlement. Subsequently A paid in notes, the amount found to be due by him as guardian. In an action brought by the wards to surcharge and falsify A's account, upon the ground of collusion and frand: *It was held,* That the proceeding was not warranted by the Act of 1866, as the wards were not parties thereto; and that the determination of the presiding Judge, being, for that reason, void, it was not necessary to submit to a jury the question, whether or not the order made by him was obtained by fraud: *Held further*, that the plaintiffs were entitled to an account.

CIVIL ACTION to surcharge and falsify an account, tried before KERR, J., at Spring Term, 1876, of WILSON Superior Court.

The facts necessary to an understanding of the case as decided are fully stated in the opinion of the Court.

There was judgment for the plaintiffs, and the defendants appealed.

*Smith & Strong* and *Smedes,* for appellants.
*Fowle* and *Keenan & Murray,* contra.

BYNUM, J. Prior to the late war, the defendant became the guardian of the female plaintiffs, who are his sisters. After the close of the war, in 1867, the defendant resigned his guardianship and procured one Davis to become guardian in order that he might settle his accounts with his late wards, in pursuance of the provisions of chap. 39 of the acts of 1866. Davis accordingly filed a petition addressed to the Judge holding the Court for Wilson County, calling upon the defendant, Scott, for a settlement of his guardian account. Scott answered the petition setting forth his account and his claims to a reduction of his liability to his wards, by reason of the depreciation of Confederate money during the war, and for other causes therein set forth. Both the petition and answer thereto were filed by the same counsel of the defendant, who also subsequently drew the receipts given by the wards, after the adjudication of the Judge presiding. The petition and answer and the statement of the account were submitted by Davis and Scott to the determination of the Judge, who at the same term of the Court filed his determination therein, awarding that the defendant was liable to Davis, the then guardian, in the sum of fifty-four dollars and eighty-two cents, and the further sum of one hundred and forty-three dollars and seventy-four cents, in full settlement of his guardianship. Immediately after this determination by the Judge, Davis resigned as guardian and Scott was re-instated as guardian, it being admitted by the answer that Scott resigned and Davis had been appointed only for the purpose of this settlement. After his re-appointment Scott paid his wards, in notes, the sum of $54.82

to one, and the sum of $143.74 to the other, in full of his guardianship liability, in pursuance of said determination of the Judge.

The plaintiffs allege that this judicial determination and subsequent settlement with them were procured by collusion and fraud, were void in law, and their prayer is to falsify and surcharge the account and settlement, and for an account.

Davis, the temporary guardian, admits in his testimony that he became guardian at the request and for the benefit of the defendant, for the single purpose of settlement, and that he made no examination whatever of the account filed, and knows nothing of the correctness of it.

The defendant relies upon the judicial determination just described as a bar to any further account; and this defence calls for the construction of the act under which it purports to have been made.

The preamble and the act are as follows: "*And whereas*, many grave and difficult disputes may arise between executors, administrators, guardians and trustees, and their legatees, distributees, wards and *cestui que trust*, in the settlement of their accounts and trusts arising from the depreciation of Confederate currency, State treasury notes and bank notes, incident to and growing out of the late war; and that law suits and expensive litigation may be obviated; Sec. 2. *Be it therefore enacted*, That in all such cases, the parties are hereby empowered to form a full and perfect statement of the case on both sides, which case shall be submitted to the determination of one of the Judges of the Superior Courts, chosen by the parties, who is hereby authorized to consider and determine the same, according to equity and good conscience. *Provided, however*, that no part of this section shall be construed to estop or hinder any person from proceeding in the usual course of law, if he shall deem the same necessary.

It is entirely clear that the statute applies to settlements between guardians and their wards, and that they must be the parties who are to make the mutual statements of the case, choose the Judge and submit the matters in dispute to his determination. It would be a monstrous perversion of justice, if such a piece of *legerdemain* as this was between the real guardian and a sham guardian of the same wards, created for the occasion, should have the effect of binding the wards, who were not parties to the proceeding. Such was not the purpose of the act, and such are not its provisions. The settlement here was simply a transaction between two guardians of the same estate, both of whom were equally accountable to the wards. However it might have effected the relation between the guardians, it could not alter the relation in which they both stood to their wards. If such a device could succeed, wards, legatees and others would have little or no security for their estates, and would be wholly at the mercy of unscrupulous guardians and other trustees. When the defendant re-invested himself with the guardianship, he re-invested himself with all its responsibilities, in the same plight and condition as they existed before he devolved the office upon Davis, for apparently a mercenary and fraudulent purpose. Bat. Rev., chap. 53, sec. 45. The statute is plain and express to " settle grave and difficult disputes that may arise between executors, guardians, &c , and their legatees, wards," &c. The statement here submitted and determined by the Judge, was not between a guardian and his wards, but between two guardians. It was *ex parte*, not authorized by the Act : the Court had no jurisdiction, and the determination was null and void. .

That the wards, who were not parties to this fraudulent proceeding, could not be effected by it is plain from the last clause of the act, which enacts : " That no part of this section shall be construed to estop or hinder any person from

proceeding in the usual course of law, if he shall deem the same necessary."

As the act in question cannot be construed so as to embrace our case, it is needless to enquire into its constitutionality.

As the judgment or determination of the Judge was void for want of jurisdiction, it was unnecessary to submit it to the jury to say whether the order made by the Judge was not obtained by Scott by fraud and collusion between Davis and Scott. However, such issue was submitted, and on the evidence found against the defendant. His Honor being of opinion that there was error in the settlement between the guardian, Scott, and his wards, made in pursuance of the void judgment, made a decree vacating and setting aside the said settlement, and directing the account between the defendant, Scott, and the plaintiffs, his wards, to be restated. There is no error.

PER CURIAM.                              Judgment affirmed.