BUNYAN BATTS and others v. AUGUSTA WINSTEAD and others, Executors.

*Guardian and Ward—Fraud—Impeachment of Decree—Statute of Limitations.*

1. In an action by a ward to impeach a decree made in a former action between the then guardian and a former guardian of such ward, it is not necessary to show actual fraud between the parties. If it is shown that there was not a *bona fide*, adverse controversy, the account of the first guardian should be re-opened.

2. The fact that such decree was made under the formalities of a Court of Equity, adds nothing to its binding force.

3. Where a guardian is discharged by an accounting *in pais*, he must be prepared to have its justice investigated until he is protected by the acquiescence or delay of the parties interested.

4. The Statute of Limitations has no application to a case of fraud, when the right of action accrued before August, 1868.

(*Ellis* v. *Scott*, 75 N. C., 108, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1877, of WILSON Superior Court, before *Moore, J.*

This action was in the nature of a Bill of Review to reverse for error in law a final decree made in a cause in the late Court of Equity for Wilson County in 1868, in the matter of the present plaintiffs, by their guardian, Elisha Barnes, against Wiley W. Winstead, (defendants' testator), their former guardian; and also to set aside and vacate said decree on the ground that it was obtained by fraudulent collusion between the said Barnes and Winstead; and also to have an account of the dealings between the defendants' testator and the plaintiffs, his wards.

The former guardian, Winstead, having failed to renew his bond was removed from his office as such at April Term, 1868, of the late County Court of said County, and said Barnes was appointed in his stead, and executed a bond with said Winstead and a personal friend of his (Winstead's) as sureties thereto. Subsequently, Barnes filed a petition against Winstead for an account of his dealings as former guardian, to which an answer was filed, and the case referred to the Clerk to state the account. The petition, answer and report of the Clerk were all returned to Spring Term, 1868, of said Court, and were all drawn by the same attorney;—the answer being signed by Winstead in his own handwriting. Sometime after the decree in the case, Barnes resigned the guardianship, and on the 22d of January, 1869, Winstead was re-appointed. The case was then submitted to the jury upon the question of fraud between the two guardians in obtaining said decree. There was a verdict for the plaintiffs. Judgment. Appeal by defendants.

*Messrs. Kenan & Murray,* for plaintiffs.
*Mr. W. N. H. Smith,* for defendants.

RODMAN, J. This action is to impeach a decree obtained by Elisha Barnes, then guardian of the plaintiffs against

Winstead, their former guardian, at Spring Term, 1868, of the Superior Court of Wilson, on the ground that the decree was obtained by collusion between Barnes and Winstead, and in fraud of the plaintiffs. That a decree may be impeached and avoided on that ground, has long been settled. Adams Eq., 416; Freeman on Judgments, § § 336, 489; Kerr on Fraud and Mistake, 293. The jury found that the decree was obtained by fraud and collusion, and the evidence was, in our opinion, sufficient to support the verdict.

The material facts of the plaintiffs' case were not controverted. Winstead was appointed guardian of the plaintiffs in 1856, and continued such until 1864, when he made returns. At some time afterwards (the date is not given) he failed to renew his bond, and was removed, and Elisha Barnes was appointed in his place, Winstead becoming one of his sureties. Barnes then brought a suit in equity against Winstead for an account of the estate of the wards. The defendant answered on oath, stating in substance that in 1862, a large part of the property of his wards consisted of bank bills; that he feared to loan it out to individuals, and thinking that he would be compelled to serve in the Confederate Army in September and October, 1862, he invested that part in Confederate bonds, which he believed was the safest investment he could make. A decree was made that he account, and it was referred to the Clerk to state his guardian account. The Clerk reported at Spring Term, 1868. He charged the ex-guardian with the sums acknowledged by him to have been on hand in 1864, and credited him with certain losses, by which these sums were much reduced, and found a certain balance in favor of each of the wards. He does not state how these losses were incurred. It may be assumed, however, for the present purpose, that they were incurred by the investment in Confederate bonds, as stated by the defendant. But as the report does not state the circumstances under which the

investments were made, it was impossible for the Court to decide considerately, whether the ex-guardian was justified in making them or not. The Court, however, confirmed the report, and gave judgment for the balance thereby found due. Some time after this—in January, 1869—Barnes resigned his guardianship and Winstead was again appointed guardian. It does not appear that he ever paid to Barnes the sums found owing by the judgment. The attorney who appeared for Barnes also drew the answer of Winstead, (although it was sworn to by Winstead personally.) The report of the Clerk, and the decree of the Court, are also in his hand-writing.

From these circumstances no inference can fairly be drawn of actual fraud, which would consist in an intention to deprive the plaintiffs of something to which they were rightfully entitled. We carefully avoid the expression of any opinion which may prejudice the claims of either of the parties on any future proceeding in this case. We may say, however, without violating that intention, that for aught that appears on this record, it may be that Winstead acted as guardian honestly, and not imprudently. That question is not presented to us, and we have no opinion on it. It was not necessary, however, for the plaintiffs, in order to the relief which they claim, to show actual fraud, as we have defined the term, as applicable in this case. It was enough for them to show, that there had not been a *bona fide, adverse* controversy between the guardian who represented them in the suit in 1868, and their former guardian. It may very well be, consistently with all that appears in this case, that the gentleman who appears to have conducted the suit in 1868, as the attorney for both parties, was clear of any conscious impropriety, and thought he was making a settlement which was just and equitable between the parties. And it may perhaps be made to appear that the settlement which was come to under his advice, was in fact just and

16

equitable, and such as would have received, and ought to have received, the sanction of a Court fully informed of all the facts, and passing on them between parties really adverse. Yet it is evident from all the facts, that in the litigation of 1868, the plaintiffs (then infants) were not really and *bona fide* represented, and that their claims were not fairly presented and urged. The circumstance that one attorney advises the two parties to a settlement of accounts, whether out of Court, or through the forms of proceeding in Court, especially if one of the parties is a guardian representing infants, is always a circumstance to raise suspicion, and although not enough by itself to justify a Court in opening the account to be again inquired into, yet coupled with the other circumstances appearing in this case, we think it fully sufficient for that purpose. There was no finding of the particular facts by which the rights of the infants could be determined. These facts were suppressed by collusion, and the exemption of the ex-guardian was conceded, and was therefore never investigated, and in form only decided by the Court. Settlements of accounts are, no doubt, often fairly and justly made, where the parties have a common adviser, and if fair and just, they will stand. It is, however, only an accounting *in pais.* That it was made under the formalities of a Court of Equity, adds nothing to its binding force. A guardian who is discharged upon such an accounting, must always be prepared to have its justice investigated, until he is protected by the acquiescence or the delay of the parties interested. The Courts would be faithless to their duties as guardians of infants, if they could permit such unsubstantial forms to be set up as an impregnable barrier to an investigation of the merits of their claims.

This case is in principle the same with *Ellis* v. *Scott,* 75 N. C., 108. There a case was agreed upon under the Act. Here there were the forms of an adversary suit.

The Statute of Limitations has no application to a case of fraud when the right of action accrued before August, 1868. How it may be in a similar case coming under C. C. P., we do not consider.

Judgment affirmed, and case remanded, in order that an account may be taken between the plaintiffs and the defendants, of the receipts and dealings of their testator as guardian of plaintiffs, and such other proceedings had as may be necessary.

PER CURIAM. Judgment accordingly.