W. A. BLOUNT, Administrator of L. O'B. Branch, *v.* ALEXANDER PARKER.

*Statute of Limitations--Ignorance of Plaintiff--Fraud of Defendant.*

1. In an action to recover damages for the conversion of personal property, the defendant pleaded the statute of limitations; *Held,* that the force and effect given by the statute to the lapse of time cannot be defeated by proof that the plaintiff did not know of the defendant's act of conversion, or that the defendant fraudulently concealed the same.

2. In such action, where it appeared that in 1865, a safe in which were certain bonds belonging to the plaintiff's intestate was broken open by Federal troops, and most of the bonds stolen or destroyed, and that defendant found three of them in the public street, and took possession of them; and afterwards in 1875, the plaintiff ascertained that the defendant had possession of the bonds, and demanded them, notifying the defendant that they belonged to the estate of his intestate, and defendant refused to surrender them, but in a few weeks thereafter, sold them and converted the proceeds, whereupon the plaintiff brought this action; *It was held,* that the action was barred by the statute of limitations.

3. In such case, the provisions of C. C. P. § 34, do not aid the plaintiff, even if his cause of action had accrued since the adoption of the Code.

(*Hamilton* v. *Shepherd,* 3 Murph. 115; *Baines* v. *Williams,* 3 Ire. 481; *Batts* v. *Winstead,* 77 N. C. 238, cited and approved.)

CIVIL ACTION, tried at January Special Term, 1878, of Rowan Superior Court, before *Kerr, J.*

L. O. B. Branch at the time of his death in 1862, owned ten coupon bonds of this State, and six coupon bonds of Virginia, each in the sum of $1000, and issued before the war, which were in possession of his wife in the City of Raleigh. In November of that year, administration on his estate was granted to the plaintiff. On the approach of the military forces of the United States towards the City in the month of April, 1865, these bonds, in a small tin box, were put in an

iron safe and sent for safety to the Town of Salisbury. A few days afterwards the Federal Cavalry entered the Town, the office in which the safe had been deposited was burned, the safe broken open, and most of. the bonds stolen or destroyed. Three of the Virginia bonds however came into the possession of the defendant, being found as he alleges, in the public street, near the office, and at the instance of the widow he was notified that they belonged to the intestate's estate and demand made for their restoration to her. The defendant refused to surrender, and in the course of a few weeks sold the bonds and converted the proceeds of sale to his own use. The plaintiff had no knowledge or information of the defendant's possession of the bonds, or of his conversion of them, until a few months before the 20th day of August, 1875, when the action was commenced against him.

Among other defences set up in the answer, the defendant relies upon the bar of the statute of limitations. On the trial, the Court, with consent of plaintiff's counsel, reserved the question arising on the defence of the statute, and submitted issues to the jury which with the responses thereto are as follows:

1. Did the defendant convert any of the bonds specified in plaintiff's complaint, and if any, how many? Answer—Three.

2. What is the value of the bonds so converted by the defendant? Answer—One thousand eight hundred dollars with interest thereon from July, 1865, being $3150, with interest on $1800, until paid.

The Court being of opinion with defendant on the point reserved, and that the action was barred, set aside the verdict and directed a nonsuit to be entered, and the plaintiff appealed.

*Mr. W. H. Bailey,* for plaintiff.

9

*Mr. J. M. McCorkle*, for defendant.

SMITH, C. J. (After stating the facts as above.) The only question before us is as to the application of the statute to the facts of this case, and whether its operation was suspended during the time the plaintiff remained ignorant of the possession and conversion of the bonds by the defendant, and began to run only at the date of discovery.

Several cases, very briefly reported in 1 Haywood, were cited in support of the proposition that the statute ran only from the time when the plaintiff acquired knowledge of the tortious act, and that the defendant was liable; and there have been cases elsewhere in which it is held that in case of fraud, the statute runs only from the time of its discovery. The doctrine seems to have been founded on the rule which prevails in a Court of Equity, and will not permit one, who has fraudulently concealed his own wrongful act and thereby prevented the suit, to set up as a defence the plaintiff's delay in bringing it. But such is not the law in this State. Here it is held, both on principle and authority, that the force and effect given by the statute to the lapse of time, cannot be defeated by proof that the plaintiff did not know of the defendant's act of conversion or of his fraud. We will refer to some of our own decided cases:—

In *Hamilton* v. *Shepherd*, 3 Murph. 115, the action was to recover damages for fraud in the sale of a land warrant, to which the defendant pleaded the statute of limitations. The plaintiff replied specially that the fraud was not discovered until within three years of the time when the action was brought. Upon the appeal the only point considered by the Court was that arising out of the statute of limitations. In delivering the opinion of the Court, HENDERSON, J. says; "When there is a pure trust, in which case equity has exclusive jurisdiction, also in cases where there is a fraud in which equity has like jurisdiction, the Court of Equity will

permit or not, at its discretion, lapse of time to bar an investigation. But that Court is .bound by no statute on the subject, for the *subject matter* is not one of the cases barred by the statute of limitations." And he proceeds to declare; " If it were on a subject matter cognizable at law and within the cases provided for in the Act of limitations, *that act is as positive a bar* in a Court of Equity as in a Court of Law." And then concludes: " For except a case in Massachusetts and a few *nisi prius cases in this State*, not a case can be found where such a rule is established ; nor do I know how any should be expected. When the words of the Act and of its savings are so explicit, we are not at liberty to travel out of them."

In the case of *Baines* v. *Williams*, 3 Ire. 481, the defendant contracted with the plaintiff's intestate to go to Georgia, there sell a negro slave of the intestate, and collect his hire, and with the moneys on his return home pay a judgment recovered by one Boykin against the intestate. The defendant did not apply the moneys to the judgment, but appropriated them to his own use. The plaintiff remained ignorant of the misapplication of the fund for many years, and supposed the debt had been discharged. In delivering the opinion of the Court, GASTON, J. says ; " As to the matters stated in the case tending to show that the plaintiff's intestate had been kept in ignorance, or *had been deceived* by the defendant in regard to his breach of the engagement, or furnishing some excuse for the delay in bringing suit, we have only to say, that in a' Court of Law, they cannot avail to take the case out of the operation of the statute. *Hamilton* v. *Shepherd*, 3 Murph. 115. Whether they can be urged with more effect in another tribunal, it is unnecessary to inquire." See also *Troupe* v. *Smith*, 20 John. (N. Y.) 33. We fully concur in this exposition of the law as applicable to the facts of this case.

We have not overlooked paragraph 9'of § 34 of C. C. P.,

which provides that when relief is asked on the ground of fraud, the statute shall run only from the discovery of the fraud by the aggrieved party, " *in cases* which heretofore were solely cognizable in a Court of Equity." This Act if applicable would not aid the plaintiff, as he is asserting a legal right in a form of proceeding substituted for an action at law, and entirely outside the jurisdiction of a Court of Equity. The Act however may be regarded as a legislative declaration that the effect of the statute cannot be defeated, even in case of undiscovered fraud, unless the fraud is such that the jurisdiction of a Court of Equity was alone competent to afford relief. Such seems also to be the opinion of this Court as intimated in the recent case of *Batts* v. *Winstead,* 77 N. C. 238. But as the plaintiff's cause of action accrued in 1865, it is governed by the law as contained in the Rev. Code ch. 65 § 3.

We therefore sustain the ruling of the Court that the plaintiff's action is barred.

No error.

PER CURIAM.                    Judgment affirmed.