Decided at PENDLETON, 13 August, 1898.

## CONKLIN *v.* LA DOW.

[ 54 Pac. 216 ]

MORTGAGE FORECLOSURE — PARAMOUNT TITLE. — The rule that a title adverse or paramount to that of the mortgagor cannot be litigated in a foreclosure suit does not apply to a suit to foreclose a mortgage on land of an infant executed by a third person to whom the land was afterwards conveyed in pursuance of a scheme to encumber the infant's property.

INFANTS — JUDGMENTS — COLLATERAL ATTACK. — Fictitious proceedings in the county court by which the land of an infant is transferred to a third person who had previously executed a mortgage thereon in pursuance of a scheme to mortgage the infant's land are not entitled to the force and effect of a judgment, and may be collaterally attacked in a suit to foreclose the mortgage.

Guardian and Ward — Mortgage.—A guardian who has no power under the statute to mortgage the land of his ward cannot indirectly encumber it by making a sham sale to a third party who executed a mortgage thereon.

Mortgage Foreclosure — Equity Maxim.* — Under the rule that he who comes into a court of equity must come with clean hands, the fact that a mortgage on a minor's interest in a tract of land is void against him because made without authority by a guardian does not deprive the mortgagee of all rights, but only of any lien on the interest of the infant. The other mortgagors and subsequent purchasers must pay or take the consequences.

From Umatilla : Stephen A. Lowell, Judge.

This is a suit by S. L. Conklin of New York to foreclose a mortgage on certain real property in Pendleton, executed by Mattie La Dow, Charles B. Isaac, and Frank E. La Dow, to plaintiff's assignor, to secure the payment of $17,350. Lewis McArthur La Dow and Letitia Lombard were, with other parties, made defendants, under the usual allegation that they had or claimed some interest in or lien upon the mortgaged premises, but that such interest, claim or lien is subsequent to and subject to plaintiff's mortgage. The defendants last named answer separately, and upon the questions arising on their answers the case is here for trial.

Lewis McArthur La Dow admits by his answer the execution of the mortgage in manner and form as alleged in the complaint, but, as a defense to its foreclosure as against him, avers that on November 5, 1876, his father, George A. La Dow, died seised and possessed of the mortgaged premises, leaving, surviving him, his widow, the defendant Mattie A. La Dow, and his two sons, the defendant Frank E. La Dow and the answering defendant; that, by reason thereof, he and his brother became the owners in fee of the property described in the mortgage, subject to the dower of their mother; that such property was, at the time, free from all liens and incum-

*Note.—A number of authorities showing different applications of this maxim are collected in notes in 3 L. R. A. 368, and 11 L. R. A. 458.—Reporter.

brances, and continued so to be until September 1, 1889, when the mortgage in suit was given thereon; that, at the time of its execution, he was a minor, of about the age of fifteen years, but that the defendant Mattie A. La Dow, who was his regularly appointed and acting guardian, being desirous of mortgaging his interest in the premises described in the complaint for the purpose of obtaining money thereon, entered into an agreement with the Jarvis-Conklin Mortgage Trust Company, the plaintiff's assignor, which was desirous of making such loan, that it should be effected by means of a pretended guardian's sale of the property to the defendant Charles B. Isaac; that, pursuant to such arrangement, his guardian filed a petition in the County Court of Umatilla County on September 12, 1889, for an order of sale of the defendant's interest in the mortgaged premises, which in due time was granted; that on November 14, 1889, by virtue of such pretended order, a sale was made to the defendant Charles B. Isaac, which was subsequently confirmed, and on January 11, 1890, a guardian's deed was executed to him; that Isaac did not pay anything for the property, but the entire proceedings were had, and the pretended sale and conveyance made and accepted, for the sole purpose of enabling him to mortgage the defendant's interest in the property to the Jarvis-Conklin Mortgage Trust Company, which had full knowledge and notice, through its agents, of all the proceedings therein, and of the objects and purposes to be accomplished thereby; that, in fact, the mortgage was executed by Isaac, and delivered to the trust company some days before the petition of the guardian for an order of sale was filed in the county court, and several months before the guardian's deed was executed. It is then averred that the entire proceedings in the county court, and the sale and conveyance to Isaac, and his

execution of the mortgage to the trust company, were and are void and of no effect as against defendant, and that the plaintiff purchased the note and mortgage after its maturity, with full knowledge of all the proceedings in the county court, and of the manner in which Isaac pretended to acquire title to the mortgaged premises.

A motion was made to strike out the affirmative matter in the answer, for the reason that it is an attempt to try in a foreclosure proceeding the validity of a title adverse and paramount to that of the mortgagor, and also because it is an attempt to attack collaterally the proceedings of the county court in the matter of the sale of a minor's property. This motion being overruled, the plaintiff asked permission to dismiss as to Lewis McArthur La Dow, so as to avoid trying any question of title in this suit; but this was likewise denied, and he thereupon filed a reply denying the material allegations of the answer, except the fact that the proceedings for the sale of the defendant's interest in the mortgaged property were in fact had.

The defendant Letitia Lombard, by her answer, denied that the plaintiff's mortgage is valid, or that her claim is inferior thereto, and then averred as a defense, in substance, that in September, 1889, the real property described in the complaint belonged to Frank E. La Dow and Lewis McArthur La Dow, who was a minor; that Mattie La Dow was his qualified and legally appointed guardian, and that the Jarvis-Conklin Trust Company, being desirous of loaning money on said property, entered into a conspiracy with Frank E. La Dow and the guardian of the defendant Lewis McArthur La Dow and one Isaac to have a pretended probate sale made of the interest of the minor, and thus vest the apparent legal title in Isaac; that thereupon, and without waiting for the probate proceedings, Frank E. La Dow, Mattie La

Dow, and Isaac executed and delivered the note and mortgage sued upon, with covenants in fee and general warranty ; that, in pursuance of such conspiracy, Mattie La Dow applied to the county court for permission to sell the interest of her ward in the real property, alleging. that it was necessary for his support ; that such proceedings, apparently regular on their face, were had therein that the land was, on November 14, 1889, apparently sold to Charles B. Isaac for $15,000, which sale was regularly confirmed, and a guardian's deed executed and delivered to the pretended purchaser. It is then alleged that the whole proceeding in the county court was a fraud ; that Isaac never intended to, and never did, pay anything for the property, but that it was a scheme to enable the trust company to secure a mortgage thereon ; and that such company took the mortgage with a full understanding that the fraudulent probate sale should be carried through, and that no one but Isaac should be permitted to bid thereat ; and that it connived at and assisted in the scheme to indirectly mortgage the interest of the minor, because the same could not be done under his name. It is then further averred that Mrs. Lombard has since the execution of the mortgage become the owner by purchase of a part of the premises described therein, and she therefore prays that the entire mortgage be declared void and be cancelled as to her. A motion to strike her answer from the files being overruled, a reply was filed, denying the affirmative matter alleged therein.

Upon the issues made by these answers and the replies thereto the cause was tried, and resulted in a decree·to the effect that the plaintiff should recover from the defendants Mattie A. La Dow, Frank E. La Dow, and Charles B. Isaac the sum of $20,612.55, the further sum of $800 attorney's fees, and his costs and disbursements ;

that the plaintiff's mortgage is a first lien upon the mortgaged premises, and prior to any liens or claims of the defendants, or any of them, except the defendant Lewis McArthur La Low, and as to him it is void and of no effect. From this decree the plaintiff and the defendant Letitia Lombard both appeal.

<div align="right">AFFIRMED.</div>

For appellant Conklin there was a brief and an oral argument by *Messrs. Geo. W. Hazen* and *Robert G. Morrow*.

For appellant Lombard there was a brief over the names of *Benjamin M. Lombard, Seneca Smith* and *Frank M. Wells*.

For respondent L. M. La Dow there was a brief and an oral argument by *Mr. John J. Balleray*.

MR. JUSTICE BEAN, after making the foregoing statement of facts, delivered the opinion of the court.

Upon the facts, the case is clearly and unmistakably with the defendant Lewis McArthur La Dow. There is no pretense that the proceedings in the county court were instituted or conducted for the purpose of actually selling his interest in the premises described in the mortgage, or that Isaac, the pretended purchaser, ever paid a dollar therefor. It is undisputed that their sole purpose was to facilitate the mortgaging of the minor's interest, and to evade the rule prevailing in this state that a guardian cannot execute a mortgage on the real estate of his ward : *Trutch* v. *Bunnell*, 11 Or. 58, 61 ( 4 Pac. 588 ). The attorney who conducted the proceedings says that their purpose was " to remove any question as to the right to mortgage the minor's interest. It was not a de-

vice or scheme which I suggested, but one which was suggested to me either by Dr. La Dow, by Sharon, or his partner, or by some correspondence with the agent of the Jarvis-Conklin Mortgage Trust Company, or with some attorney of the company ''; and that he did not know whether Isaac, when he bought in the property at the guardian's sale or afterwards, paid the purchase price. '' My recollection is that he either gave his note for the amount, or made some arrangement with some bank to let him have the money ; but it was understood that whatever he paid should be repaid by a transfer of the property back to the minor, or to someone else, after the mortgage was placed on it. The understanding which I had about the matter, and which I gathered either from conversations with Dr. La Dow or Mr. Isaac, or both, was that either the money should be paid in, or Isaac should give his note for that amount, and that, after the mortgage had been placed on the property, such money should be returned to Isaac if he had paid it, or, if he did not pay it, his note should be cancelled and returned to him, upon his executing a deed either to Lewis McArthur La Dow, or to someone else for the property, which he bid in at the sale. No, I am not sure that he ever executed any note at all.''

In brief, the facts of the transaction are that Frank E. La Dow and the guardian of Lewis McArthur La Dow, being of the opinion that it would be for the interest of the owners of the property, including the minor, to mortgage the same for money with which to construct a brick block thereon, applied through their agent, Dr. La Dow, to, and obtained from, the Jarvis-Conklin Mortgage Trust Company, a loan for that purpose ; but as the interest of the minor could not be mortgaged either by himself or his guardian, and as it was desirable to begin work on the building immediately, it was arranged

that the note and mortgage should be executed by Frank E. La Dow, Mrs. La Dow, and one C. B. Isaac, a brother of Mrs. La Dow, the money advanced as the building progressed, and that such proceedings should thereafter be had in the county court as might be necessary to vest Isaac with the legal title to the minor's interest, and thus make the mortgage good under the warranty clause therein. In pursuance of this arrangement, the mortgage was executed and recorded; and Isaac gave to the trust company a bond in the penal sum of $16,000, reciting the fact that the title to a portion of the mortgaged premises had not been perfected in him, and conditioned that if it should be perfected to the satisfaction of the attorneys of the company on or before the 15th of January, 1890, and such mortgage should become a first lien upon the property therein described, the bond should be void, otherwise to remain in full force and effect. The money was thereupon advanced by the mortgage company as needed in the construction of the building, and the proceedings set out in the answer subsequently had.

It was suggested at the argument that there was no evidence that the trust company had knowledge of the character of the proceedings, or of the purpose to be accomplished thereby; but this contention is so much at variance with the entire circumstances of the case, as well as with the positive testimony of the witnesses, that it is scarcely entitled to serious consideration. The evidence is undisputed that the company made a loan to the defendant's guardian, and, as security therefor, received and accepted a mortgage on his property given by a party who had no right or title thereto, under an agreement that he should subsequently acquire the title by means of a proceeding in the county court. This is of itself sufficient to indicate quite conclusively that the company had knowledge, through its agents, of the char-

acter of such proceedings, and of the purpose to be accomplished thereby. But, besides this, Messrs. Marston & Sharon, who were the local agents of the mortgage company at Pendleton, and through whom the loan was made, both testify that they and the general agent of the company at Portland had full knowledge of the whole transaction. Mr. Sharon, who seems to have had the matter of this particular loan in charge, testifies that, "in order to enable the property to be mortgaged, we had proceedings in the county court to dispose of the minor's interest. The object of the proceedings in the county court was to dispose of the minor's interest, and get it into the hands of some person competent to sign a mortgage, and we got the property into the hands of Charles B. Isaac." He further says that he advised the general agent of the company at Portland, to whom all applications for loans and abstracts of title were forwarded, that Lewis McArthur La Dow was a minor, and that whatever was subsequently done in attempting to divest him of his title was by the direction and with the full knowledge of such agent; and the attorney who appeared for the guardian says of the proceedings in the county court: "I understood it was a condition which the party advancing the money required. Yes, a condition which they required before they would make the loan."

Nor is there any merit in the contention that the plaintiff in this suit is entitled to any special consideration on the ground that he is a *bona fide* purchaser of the note and mortgage for value. The evidence shows that he was an officer of the trust company at the time the note and mortgage in question were executed; that it was past due when assigned and transferred to him; and there is no evidence that he ever paid anything therefor.

Indeed, it is practically admitted by plaintiff's counsel

in their brief that the questions involved on this appeal
are of law, and not of fact, for they state the grounds of
their appeal as follows : ''(1) The court should not have
attempted to determine in this foreclosure suit the ques-
tion of a paramount title in Louis McArthur La Dow.
When this title appeared in the case, plaintiff not only
moved to strike it out, but asked permission to amend
the complaint so as to avoid this question ; and it was
error to refuse this motion.    (2) The guardian's sale is
sufficient, regardless of whether or not there was a con-
spiracy to mortgage the minor's interest, since the entire
record shows that it was necessary to sell this land for
the support of Lewis McArthur La Dow.    (3) The
answers both of Lewis McArthur La Dow and Letitia
Lombard are a collateral attack on the final judgment of
the probate court, and should have been stricken out,
inasmuch as they and the testimony,supporting them do
not constitute a defense.''

In support of the first point, counsel rely upon the
familiar rule that a title adverse or paramount to that of
the mortgagor cannot be litigated in a foreclosure suit.
That doctrine has no application to this case.    No ques-
tion of paramount title is involved in the defense of
Lewis McArthur La Dow.    His defense is that, at the
time of the execution of the mortgage, he was, and is
now, the owner of the undivided half of the property de-
scribed therein, and that the whole proceedings leading
up to its execution, including those in the county court,
were simply a scheme to incumber his property.    His
claim is not adverse to that of the mortgagor, for Isaac
did not in fact pretend to have any title to the mortgaged
premises.    He was simply claiming to act as the repre-
sentative of the defendant, and as an instrument for
effecting a mortgage upon his property.    When he exe-
cuted the mortgage he did not design to incumber his

own property, but that of the contesting defendant.   The
defense made grows out of the very contract and transac-
tion which form the basis of plaintiff's suit; and Lewis
McArthur La Dow, whose property is sought to be bound
by the mortgage, has just as much right to have its
validity litigated and determined in this suit as he would
have if it had been executed directly by his guardian or
by any other person assuming to act for him.   The fact
that an attempt was made to cover up the real transac-
tion under the forms of law can in no way lessen his
rights in the premises.   If the proceedings in the county
court had been for the purpose of actually selling his in-
terest in the land, a question as to their validity or
invalidity could not be tried in this suit.   But they were
admittedly not for that purpose, but were adopted as a
means of effecting a mortgage upon his property ; and it
is eminently proper that the validity of such mortgage
should be tried in a suit for its foreclosure.   The pro-
ceedings of the county court are regular, and on their
face vest a perfect title in Isaac, the mortgagor.   A de-
cree of foreclosure and sale to some innocent purchaser,
who might buy relying on the record, would therefore, at
least, serve to further complicate matters, if not actually
deprive defendant of his title.   The record and evidence
show that the mortgage was intended and designed to be
a lien upon the property of the answering defendant;
and, in our opinion, he has a right to contest its validity
in this suit, and the court committed no error either in
overruling the demurrer to his answer or in refusing to
allow the plaintiff to dismiss as to him.

It is next claimed that this is a collateral attack upon
the judgment and proceedings of the county court, for
fraud, and for that reason must fail.   But, as between the
plaintiff and the defendant Lewis McArthur La Dow,
these proceedings are not entitled to the force and effect

of the dignity of a judgment.  They were purely ficti-
tious, instituted for the purpose of evading a wholesome
rule of law, were a fraud upon the court, and cannot
therefore be treated as a judicial proceeding.  According
to the statement made by Solicitor General Wedderburn
in his argument in *Duchess of Kingston's Case*, 20 How.
St. Trials, 355, 478, and adopted by Lord Brougham in
the subsequent case of *Earl of Bandon* v. *Becher*, 3 Clark
& F. *479, *510, a judgment "is not an instrument with
a bit of wax and the seal of the court put to it.  It is not
an instrument with the signature of a person calling
himself a register.  It is not such a quantity of ink be-
stowed upon such a quantity of stamped paper.  A sen-
tence is a judicial determination of a cause agitated be-
tween real parties, upon which a real interest has been
settled.  In order to make a sentence, there must be a
real interest, a real argument, a real prosecution, a real
defense, a real decision.  Of all these requisites, not one
takes place in case of a fraudulent and collusive suit.
There is no judge.  But a person, invested with the en-
signs of a judicial office, is misemployed in listening to a
fictitious cause proposed to him.  There is no party liti-
gating; there is no party defendant; no real interest
brought into question."  And so Lord Brougham himself
said in *Shedden* v. *Patrick*, 1 Macq. 619, 10 Chi. Leg.
News, 234: "If it be proved that there has not been
a real suit instituted and appealed, but that there was
a collusion and fraud between the parties ; that there was
no real plaintiff and real defendant in real conflict to-
gether, upon whose case the court below and this house
had adjudicated ; if it appear that there was no real trial,
no real proceeding, and consequently no real judgment,
but that the court was imposed upon by the fraud of the
parties ; that the court was led to believe that there was
a contest when there was none ; and that there was an

opposition of parties when they were really in concert, and leagued for the purpose of deceiving the court to serve their own ends,— then, my lords, I say I am prepared to go to the full length of holding that in this house, as in every other court, a proceeding so instituted, so carried on, and so consummated in a judgment thus fraudulently and collusively obtained — in a word, a fictitious judgment — may be treated as a nullity.''

The case before us falls within the principle thus stated by Mr. Wedderburn and Lord Brougham. The proceedings in the county court were purely fictitious, gotten up, not for the purpose of obtaining any real decree or order of such court for the sale of the property belonging to the contesting defendant, but to facilitate the accomplishment of an entirely distinct and separate purpose. It was not intended that any questions should be submitted to the court for adjudication, or that it should perform any office in the matter except to approve in a formal way what the parties had already agreed upon. The whole scheme was a pure fiction, by which the court was led to believe that it was adjudicating and determining real questions, properly within its jurisdiction, when in fact the parties had themselves settled and agreed upon just what should be done, and had no intention whatever to abide by or be governed by its decree or order. The machinery of the court was simply used by them to cover up the real truth, and to accomplish something entirely different from what the proceedings on their face purported to be. It would be an anomalous doctrine if, in a suit to foreclose a mortgage upon the property of a minor, he could not question its validity, because, in order to facilitate its execution, resort had been had to a pretended sale of his interest to the ostensible mortgagor, under some fictitious proceedings of the county court.

But it is said that the minor himself was a party to such proceedings, and is therefore bound by the decree and orders of the court. It is true that it has been held in some instances that a minor is a party to a proceeding for the sale of his property instituted by his guardian, in the sense that he is not required to be served with notice thereof; but we think it may be safely asserted that no court has ever gone to the extent of holding that he cannot question such proceedings in a suit of this kind, when they were fictitious, and instituted for the purpose of avoiding a rule of law designed for his protection.

We conclude, therefore, that as between the plaintiff and the contesting defendant, Lewis McArthur La Dow, the proceedings of the county court are an absolute nullity, and the mortgage in question is void. In coming to this conclusion we do not desire to be understood as intimating that there was any actual fraud intended. It is no doubt true, and the evidence shows, that all the parties acted in the utmost good faith, believing that it would be for the best interests of the minor to mortgage his property to secure funds with which to improve the same. But that fact does not help the matter, or tend in any way to give validity to the proceedings of the county court or the mortgage sought to be foreclosed: *Batts* v. *Winstead*, 77 N. C. 238. Under the laws of this state, a guardian cannot mortgage the real estate of his ward; and what he is prohibited from doing directly he certainly cannot do indirectly, by means of a sham sale to some third person: *Ferry* v. *Laible*, 31 N. J. Eq. 566.

The defendant Lombard claims to have purchased in good faith a portion of the mortgaged premises from the successor in interest of Isaac, after the execution and recording of the mortgage in question, and after the termination of the proceedings in the county court; and

she claims that the mortgage sought to be foreclosed was so tainted with fraud in its inception that the plaintiff does not come into court with clean hands, and therefore a court of equity cannot afford him any relief, even a decree foreclosing the mortgage as against the interests of Frank E. La Dow and Mrs. La Dow. But we cannot concur in this view. There was in fact no actual fraud in the transaction. The note and mortgage represent a loan of money made by the mortgage company. The fact that the scheme which was adopted to secure the mortgage on the minor's interest was ineffectual to accomplish that purpose as against him ought not, it seems to us, to deprive the plaintiff of the right to foreclose as against the other parties to the mortgage ; and especially so since the question as to whether Mrs. Lombard did not obtain a perfect title, on the ground that the proceedings of the county court, being regular and valid on their face, import absolute verity in favor of a subsequent innocent purchaser for value, is not involved in this case, and could not be tried therein. It follows from what has been said that the decree of the court below must be affirmed, and it is so ordered.

<div align="right">AFFIRMED.</div>

<div align="center">Decided at PENDLETON, 13 August, 1898.