## LOMBARD et al. v. LA DOW et al.

(Circuit Court of Appeals, Ninth Circuit. September 21, 1903.)

### No. 918.

1. VENDOR AND PURCHASER—TITLE OF PURCHASER—CONSTRUCTIVE NOTICE OF INVALIDITY.

A purchaser of real estate, in reliance on the record title, who deraigns title to a portion of the property through a guardian's sale made under an order of court, where the record disclosed an outstanding mortgage covering the entire property, executed prior to the guardian's sale, but in which the purchaser thereat joined, although having at the time no interest, was charged with notice of the irregularity of the transaction.

and put upon inquiry as to the real condition of the title; and where the proceedings for the sale by the guardian were in fact fictitious and void, being designed merely to circumvent the law prohibiting the mortgaging of a minor's property, such purchaser was not protected by the record as a bona fide purchaser, and took no title as against the minor.

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 115 Fed. 443.

This suit was commenced by the appellee Lewis McArthur La Dow in the circuit court of the state of Oregon for Umatilla county in August, 1900, to partition certain real property between himself and the North American Trust Company, and to quiet the title to certain portions of the same property as between himself and Letitia Lombard, whose interest is represented by the appellants. The plaintiff claimed to be the owner in fee simple of the undivided one-half interest in lots 3, 4, 5, 6, 7, 8, 9, and 10, in block 8, in the city of Pendleton. The complaint alleged that Letitia Lombard was asserting some claim or interest in a part of the real property, but in fact had no interest in said property. The property claimed by Letitia Lombard is a piece 27 feet and 5 inches by 100 feet, on the west side of lots 7 and 8, in block 8, of the above-described property. The prayer of the complaint is for a decree of partition of said property between Lewis McArthur La Dow and the North American Trust Company, and for a decree that Letitia Lombard has no claim upon or interest in any portion of the real property in controversy. The defendant Letitia Lombard then filed a petition and undertaking for removal of said cause to the United States Circuit Court for the district of Oregon, alleging that the suit was of a civil nature, to partition between the plaintiff and the defendant North American Trust Company the land described in the complaint, and a suit to quiet title between the plaintiff and the defendant Letitia Lombard to the portion of the property claimed by her, and that there was in said suit a controversy which was wholly between citizens of different states, and which could be fully determined as between them, to wit, a controversy between the defendant Letitia Lombard, a citizen of the state of Illinois, and the plaintiff, a citizen of the state of Oregon. Upon giving the bond for removal, as provided by law, the cause was removed to the Circuit Court of the United States for the district of Oregon. Thereupon the plaintiff, by leave of the court, filed an amended bill of complaint. The defendant Letitia Lombard having died during the course of the proceedings, the appellants herein were substituted as her representatives, Benjamin M. Lombard and Charles H. Lombard as her sole heirs at law, and Franklin S. Akin as her administrator.

It appears that one George A. La Dow died intestate in Umatilla county, Or., about November 1, 1876, leaving surviving him Mattie A. La Dow, his widow, and Frank E. La Dow, and the complainant Lewis McArthur La Dow, minor children; that the said minors, by the death of the said George A. La Dow, became the owners in fee simple of real property described as lots numbered 3 to 10, inclusive, in block 8, in the city of Pendleton, state of Oregon, subject to the dower rights of the said Mattie A. La Dow; that the said Mattie A. La Dow was, about November 11, 1876, appointed guardian of the person and estate of the complainant Lewis McArthur La Dow, and continued to be such guardian until on or about the 12th day of September, 1889; that on that day proceedings were instituted by the said Mattie A. La Dow in the county court of Umatilla county, Or., for the sale of the complainant's interest in the inherited property, and one Charles H. Carter was appointed guardian ad litem of the complainant, who was then about 14 years old. Frank E. La Dow had attained his majority on December 23, 1888. A sale of the complainant's interest was ordered on October 12, 1889. The record of the proceedings show that the sale was made on November 14, 1889, to one Charles B. Isaac, for the consideration of $15,000. The sale was confirmed by the court on January 8, 1890, and on January 11, 1890, Mattie A. La Dow, guardian of Lewis McArthur La Dow, conveyed to C. B. Isaac the undivided one-half interest in said lots 3 to 10, inclusive, in block 8, in Pendleton, Or.,

subject to the dower right of Mattie A. La Dow. This deed was witnessed, sealed, and acknowledged so as to be entitled to record, and filed for record on January 20, 1890. As we shall see presently, no such sale was in fact ever made, but these proceedings constitute a link in the chain of title claimed by the appellants to the property in controversy. On March 13, 1894, Mattie A. La Dow, Frank E. La Dow, and Charles B. Isaac conveyed the whole of the property to James A. and Bertha Howard for the expressed consideration of $40,000. On January 21, 1895, James A. and Bertha Howard conveyed to B. M. Lombard a one-half interest in the portion of the property now claimed by Letitia Lombard. On May 10, 1895, B. M. Lombard conveyed the interest he had acquired to Letitia Lombard. On October 7, 1896, James A. and Bertha Howard conveyed an undivided half interest in a portion of the same property to Letitia Lombard, thus vesting the whole title to the lot therein conveyed in Letitia Lombard, if the conveyances are found to be valid.

The record discloses, however, another and different transaction relating to the title to this property. It appears that Mattie A. La Dow, Frank E. La Dow, and Charles B. Isaac signed an instrument dated at Kansas City, Mo., September 1, 1889, in which lots 3 to 10, inclusive, of block 8, in the city of Pendleton, Or., were mortgaged to the Jarvis-Conklin Mortgage Trust Company, of Kansas City, to secure the payment five years after that date of the sum of $17,350. The mortgage was acknowledged by Mattie A. La Dow on September 14, 1889, before J. C. Oliver, a notary public of Los Angeles county, Cal., and by Frank E. La Dow and Charles B. Isaac on September 27, 1889, before E. E. Sharon, a notary public of Umatilla county, Or. The mortgage so acknowledged was filed for record September 27, 1889. As there was no certificate as to the official character of the acknowledging officer before whom Mattie A. La Dow made her acknowledgment, she made a second acknowledgment of the mortgage before E. E. Sharon, a notary public of Umatilla county, Or., on November 22, 1889, and the mortgage, thus acknowledged, was again filed for record on that day. On December 14, 1889, the Jarvis-Conklin Mortgage Trust Company assigned all its right, title, and interest in and to this mortgage to S. L. Conklin, and on November 25, 1896, Conklin commenced a suit in the circuit court of the state of Oregon for Umatilla county against Mattie A. La Dow, Frank E. La Dow, Lewis McArthur La Dow, Charles B. Isaac, James A. Howard and Bertha A. Howard, his wife, Letitia Lombard, and others, for the purpose of foreclosing the mortgage. The defendants appeared and resisted the foreclosure proceedings, the defendant Lewis McArthur La Dow setting up as a defense the facts concerning the proceedings taken in the county court for the sale of the property by Mattie A. La Dow, as his guardian, alleging the filing of the petition in the county court for the sale of the property, the order of sale by the court, and the sale of the premises to Charles B. Isaac. He also alleged the facts concerning the mortgaging of the property by Mattie A. La Dow, Frank E. La Dow, and Charles B. Isaac to the Jarvis-Conklin Mortgage Trust Company, and it was alleged as a defense that both proceedings, namely, the proceedings to sell the property and the action of the parties in mortgaging the property, were each and every one of them void as against the said Lewis McArthur La Dow, and ineffectual to divest him of any interest or right or title he may have had in the property, or of which he became the owner as the heir of George A. La Dow. The defendant Letitia Lombard filed her answer in said cause, in which she set up and alleged that she was the owner in fee simple of the parcel of land 27 feet and 5 inches by 100 feet, heretofore described. Thereafter the cause was tried in the state circuit court, and a final decree entered, in which it was adjudged and decreed that the proceedings taken by Mattie A. La Dow in the county court of Umatilla county, the order of sale of the premises, the sale thereof to Charles B. Isaac, and the mortgage of the premises made by Mattie A. La Dow, Frank E. La Dow, and Charles B. Isaac to the Jarvis-Conklin Mortgage Trust Company, and each and every one of them, were absolutely void as against Lewis McArthur La Dow, and ineffectual to divest any part or parcel of his right, title, and interest of, in, or to the said premises. The court further decreed that Lewis McArthur La Dow was the owner in fee simple, free from all liens and incumbrances, of the undivided one-half interest of all of the said property,

subject to the dower right of Mattie A. La Dow, and the court decreed a foreclosure of the mortgage against all the other defendants, and all their right, title, and interest in or to said property, and every part and parcel thereof, and against each and every one of them, and decreed that the same should be sold to satisfy the sum of $16,300 due upon the mortgage, together with interest and attorney's fees. On appeal to the Supreme Court of Oregon the decree of the lower court was in all things affirmed, the court holding that the guardian had no power under the statute of the state to mortgage the land of the ward, and that the proceedings relating to the sale of the ward's interest in the land were fictitious, fraudulent, and void. Conklin v. La Dow, 33 Or. 354, 54 Pac. 218. In pursuance of this decree, affirmed by the Supreme Court, execution was issued by the state circuit court, and sale made of the property to S. L. Conklin, except the undivided half interest therein of Lewis McArthur La Dow. Conklin assigned his certificate of sale to the North American Trust Company, who received the sheriff's deed therefor, and for two years prior to the beginning of the present action the North American Trust Company and Lewis McArthur La Dow were in the sole possession of all the property. After the determination of the appeal in the state Supreme Court, as above stated, the sale of the property, confirmation of the sale, expiration of the time for redemption, and the execution and delivery of the sheriff's deed, Letitia Lombard, as one of the defendants in that action, applied to the Supreme Court for a modification of its decree, and for a recall of its mandate issued in the case. The court granted the petition, and modified its decree, reaffirming the decree of the lower court, except so far as the conflicting claims of the respondents Letitia Lombard and Lewis McArthur La Dow to a portion of the mortgaged premises were determined thereby as between themselves. As to such matters, it was adjudged and decreed that so much of the decree of the lower court as in any way adjusted or interfered with the controversy between Letitia Lombard and Lewis McArthur La Dow as to their respective rights in the premises, as between themselves, be deemed erased, as by said mandate directed, and that otherwise the decree should stand as entered.

In the bill of complaint in the present suit the complainant recites the foregoing proceedings and transactions, and alleges that Letitia Lombard is estopped and ought not to be permitted or allowed to plead any right, title, or interest in the premises in controversy. The prayer of the bill is that Letitia Lombard be decreed to have no right, title, or interest in or to any part of the said property; that the said proceedings in the county court of Umatilla county, Or., be decreed to be null and void and ineffectual to devest any interest or title which complainant had in the property as heir of George A. La Dow, deceased; that complainant be decreed to be a tenant in common with the defendant North American Trust Company; and that the said property be partitioned between them as tenants in common, after ascertaining the value of the dower right of said Mattie A. La Dow therein.

The defendant Letitia Lombard denies having had notice of any invalidity of proceedings in the county court, and avers that B. M. Lombard was an innocent purchaser in good faith for a valuable consideration, relying upon the record of said proceedings, and that she in turn purchased from him, paying a valuable consideration, and without notice or intimation that the title was not perfect. She denies that any other title was conveyed by the sheriff's deed at the foreclosure sale than that of Frank E. La Dow to an undivided half interest in the entire property, and the dower right of Mattie A. La Dow in and to the same half interest, and avers that the mortgage did not affect the interest of the complainant Lewis McArthur La Dow, to which interest she is the legal successor, by reason of the purchase thereof in good faith by B. M. Lombard, and later by herself.

The defendant North American Trust Company does not claim to have any knowledge of the respective rights of the parties claiming title, but avers that the property is still subject to the mortgage given to the Jarvis-Conklin Mortgage Trust Company for an amount unsatisfied by the sheriff's sale; and admits that the partition prayed for by complainant may be made.

The case proceeded to trial, resulting in a decree adjudging the complainant and the North American Trust Company to be tenants in common and sole

owners of the property in controversy, but not providing for a partition as prayed for in the amended bill of complaint. It decrees that Letitia Lombard has no right, title, or interest in or to the property, and that the proceedings had in the county court of the state of Oregon for Umatilla county in the matter of the estate of Lewis McArthur La Dow, minor, were totally ineffectual to devest any interest, right, title, or estate which belonged to said Lewis McArthur La Dow in any of the real property described, as heir of George A. La Dow. A petition for rehearing was argued, resulting in the same decree, and a motion by the defendant Letitia Lombard for a judgment on the pleadings was denied. From this decree an appeal was taken to this court.

Martin L. Pipes, Arthur P. Tifft, and George C. Stout, for appellants F. S. Akin and B. M. Lombard.

John T. McKee, for appellant Charles H. Lombard.

Charles H. Carter, James H. Raley, John J. Balleray, John McCourt, and R. J. Slater, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The purpose of this action was originally twofold: (1) To partition the entire property in controversy between the complainant and the defendant the North American Trust Company; (2) to quiet the title to a portion of the property as against the claim of title asserted by the defendant Letitia Lombard. By some arrangement between the complainant and the North American Trust Company a decree of partition has been rendered unnecessary, and that question has been eliminated from the case. The only controversy remaining is the claim of title asserted by Letitia Lombard to the lot in question. This title is based upon the proceedings in the county court of Umatilla county, Or., resulting in the guardian's sale of complainant's interest in the property to one Charles B. Isaac. The prayer of the bill of complaint is that these proceedings in the county court be decreed to be null and void. The judgment of that court is thus directly attacked upon allegations that the proceedings were fictitious and unreal; that there was no actual controversy and no matter tried or considered by that court; that the whole proceedings were a sham and a pretense, executed in form, but designed to circumvent the law of the state regulating the management of the minor's estate by his guardian. This so-called judgment of the county court was before the Supreme Court of the state in Conklin v. La Dow, 33 Or. 354, 54 Pac. 218. That action was brought in the circuit court of the state to foreclose a mortgage given by the guardian upon the real property of the complainant. The execution of this mortgage was the real transaction behind the proceedings taken by the guardian in the county court for the sale of the same property. The Supreme Court, speaking of these latter proceedings, said:

"It is next claimed that this is a collateral attack upon the judgment and proceedings of the county court for fraud, and for that reason must fail. But as between the plaintiff and the defendant Lewis McArthur La Dow these proceedings are not entitled to the force and effect of the dignity of a judg-

ment. They were purely fictitious, instituted for the purpose of evading a wholesome rule of law, were a fraud upon the court, and cannot, therefore, be treated as a judicial proceeding."

Then, after citing a statement made by Solicitor General Wedderburn in his argument in Duchess of Kingston's Case, 20 How. St. Trials, 355, 478, adopted by Lord Brougham in the subsequent case of Earl of Bandon v. Becher, 3 Clark & F. *479, *510, and the opinion of Lord Brougham in Shedden v. Patrick, 1 Macq. 619, 10 Chi. Leg. News, 234, the court says further:

"The proceedings in the county court were purely fictitious, gotten up, not for the purpose of obtaining any real decree or order of such court for the sale of the property belonging to the contesting defendant, but to facilitate the accomplishment of an entirely distinct and separate purpose. It was not intended that any questions should be submitted to the court for adjudication, or that it should perform any office in the matter except to approve in a formal way what the parties had already agreed upon. The whole scheme was a pure fiction, by which the court was led to believe that it was adjudicating and determining real questions, properly within its jurisdiction, when in fact the parties had themselves settled and agreed upon just what should be done, and had no intention whatever to abide by or be governed by its decree or order. The machinery of the court was simply used by them to cover up the real truth, and to accomplish something entirely different from what the proceedings on their face purported to be. It would be an anomalous doctrine if, in a suit to foreclose a mortgage upon the property of a minor, he could not question its validity because, in order to facilitate its execution, resort had been had to a pretended sale of his interest to the ostensible mortgagor, under some fictitious proceedings of the county court."

It was accordingly held that as between the plaintiff in that case and the defendant Lewis McArthur La Dow the proceedings of the county court were an absolute nullity, and the mortgage in question was void.

The defendant Letitia Lombard was a party to that action, and her defense in that case, as in the present case, was that the proceedings of the county court, being regular and valid on their face, imported absolute verity in her favor as a subsequent innocent purchaser for value. The court held that this issue was not involved in that case, and could not be tried therein, and it was therefore not determined. Nevertheless, the bill of complaint in the present case alleges an estoppel against the defendant Letitia Lombard and in favor of the complainant, by reason of the fact that the conveyance made by the guardian to Isaac pursuant to the order of sale of the county court, and under which Letitia Lombard claims title, was executed subsequent to the execution of the mortgage, and therefore subject to its conditions, and that any and all right, title, and interest which she had or could have had in the property was foreclosed by the judgment in the foreclosure proceedings. The view we take of this case upon the merits renders it unnecessary to pass upon the question. We shall have occasion, however, to consider the facts alleged in this behalf as tending to show that Letitia Lombard had notice of the fraudulent character of the guardian's sale, and that she is therefore not in a position to claim title as an innocent purchaser for value without notice. To determine the validity of the guardian sale, reference must be had to the proceedings leading to it, and the facts upon which those proceedings were based; and, the claim of

fraud in those proceedings having been set up, the court of necessity admitted evidence aliunde the record. From that evidence it was impossible to decide otherwise than as decided by the court below, and by the state court, in the foreclosure proceedings, that the guardian sale was illegal and void. The testimony of Isaac himself, the purchaser at the guardian sale, is an unqualified admission that he paid nothing for the property, and had no interest in it whatever, other than to go through with the form of purchasing it in order to enable the property to be mortgaged, and then to convey it back to the original owners. It is not questioned that the parties instituting the proceedings for the sale of the property, in order to mortgage it, acted in the belief that they were promoting the best interests of all concerned; nevertheless their purpose was illegal, and the transaction was void and against the rights of the plaintiff herein.

The evidence is conflicting as to whether or not the defendant Letitia Lombard had actual knowledge of the infirmity of title, consequent upon the invalidity of the guardian sale, at the time she purchased the property in controversy. But there can be no question that the state of the record title at the time of her purchase was such as to put her upon inquiry as to the real condition of the title. The title she acquired was derived from the proceedings in the county court resulting in the guardian's sale of the property on November 14, 1889, to one Charles B. Isaac. The sale was confirmed by the court on January 8, 1890. The deed of conveyance was executed January 11, 1890, and was witnessed, sealed, and acknowledged so as to entitle it to be recorded, and was filed for record on January 20, 1890. There was then of record a mortgage upon the same property executed by Mattie A. La Dow, widow, Frank E. La Dow, and Charles B. Isaac, to secure to the mortgagees the payment of $17,350. This mortgage was acknowledged and filed for record on September 27, 1889, and again acknowledged (to cure a defect in the acknowledgment) and filed for record on November 22, 1889. This mortgage was illegal under the laws of the state so far as it affected the interest of the minor heir Lewis McArthur La Dow. But further than this at the time this mortgage was executed and filed for record Isaac had no interest in the property. What, then, was the significance of this illegal mortgage with respect to the title to property in which Isaac, one of the mortgagors, had no interest? It was, of course, notice that there was some substantial irregularity in the mortgaging of the property, and, the transaction being so closely connected in point of time with the proceedings for the guardian sale, it was notice sufficient to put a prudent person on inquiry as to the real condition of the title. Moreover, the sale of a half interest in the entire property by Howard and wife to B. M. Lombard in 1895, and the sale of the remaining half interest in the lot in controversy by Howard and wife to Letitia Lombard in 1896, were made subject to this mortgage. It appears that the purchase was made for Letitia Lombard by B. M. Lombard, her son, who handled her property absolutely, having her power of attorney for that purpose. The knowledge of B. M. Lom-

bard then was the knowledge of the defendant Letitia Lombard. B. M. Lombard testifies that he examined an abstract of the property when he made the purchase, and had no other knowledge than was contained in the abstract, and no knowledge or intimation that any one had any equity or claim to the property, other than that of the Jarvis-Conklin mortgage. James A. Howard, who purchased the property with B. M. Lombard, and later deeded to Letitia Lombard, testifies that at the time he and B. M. Lombard arranged to purchase the property they discussed the matter of Lewis McArthur La Dow having some equity in the property, and how that equity could be satisfied when young La Dow came of age. C. M. Wade, cashier of the First National Bank at Pendleton, testifies to conversations had with B. M. Lombard and Howard together, when they were endeavoring to negotiate a loan upon this property if they purchased it, and states that according to his recollection "a part of the consideration and trade and the understanding throughout was that when this [the mortgage] had been settled up that Lewis La Dow was to get the back lots." According to Mr. Wade's understanding, Lombard and Howard were to assume the mortgage, and pay no other consideration for the property, but that when Lewis La Dow came of age they were to deed back to him certain lots, and that they considered they were getting the property cheap on those terms. The testimony of Lombard and Howard is not clear as to the consideration paid. It appears to have been connected with several trades of property, so that it was a difficult matter to separate the particular consideration given for this property. Howard does not appear to have paid anything whatever, and Lombard but little, if anything. It is certain that Howard purchased with knowledge of Lewis La Dow's equity, and the inference to be drawn from all the testimony is that B. M. Lombard also had such knowledge at the time he purchased; that, though he may have relied upon the record title, he had knowledge that the mortgage was placed on the property before the purchase at the guardian sale was completed, and was therefore charged with sufficient notice of its invalidity to place him upon inquiry, independent of any other knowledge he may have acquired from other sources.

These facts bring the case squarely within the rule that a court of equity will set aside the sale of an infant's lands fraudulently made by his guardian under authority derived from a court having jurisdiction of the subject, and will grant such relief therein as is consistent with equity proceedings. Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630, citing Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. Ed. 547. See, also, Bergin v. Haight, 99 Cal. 52, 33 Pac. 760.

There are no substantial equities in support of appellants' claim of title, and we see no reason for disturbing the decree of the court below.

The decree of the Circuit Court is therefore affirmed.